DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment following a bench trial in the Ottawa County Court of Common Pleas. The court found that sellers of real property had fraudulently concealed the presence of a drainage easement through the land sold. In doing so, the court also concluded that the sellers had also breached their general warranty covenants. Because we conclude that the trial court's characterization of the drainage way as an easement was proper, we affirm that portion of its judgment. We reverse that portion of the trial court's judgment awarding punitive damages.
 {¶ 2} Appellees are Mark and Lori Schmiehausen. In the winter of 1997-98, appellees were looking for a wooded plot upon which to build a home. Appellees became aware that appellants, Donald and Erika Zimmerman, had a five acre wooded parcel of undeveloped land off Portage-South Road in Ottawa County's Salem Township for sale.
 {¶ 3} In January 1998, Mark Schmiehausen, accompanied by his father-in-law, met Donald Zimmerman to inspect the land The five-acre plot was located approximately 900 feet off Portage-South Road. According to Mark Schmiehausen's trial testimony, he was concerned about controlling development near his home. When he asked Zimmerman about the possibility of acquiring the additional five acres between the wooded lot and the road, Zimmerman suggested that appellees could divide the parcel, selling off lots to recoup the extra cost.
 {¶ 4} Appellees eventually purchased 12.44 acres from appellants for $52,000. The following year, appellees purchased from appellants an additional 15.9 adjoining acres. Both parcels were conveyed with "general warranty covenants."
 {¶ 5} Appellees broke ground for their own home and hired an engineering firm to draw plans for an eight-lot subdivision on the land they had acquired from appellants. Mark Schmiehausen testified that engineering drawings had been prepared and were ready to be submitted for approval when he was contacted by the owner of the adjoining property to the south, David Thierwechter.
 {¶ 6} Thierwechter told Schmiehausen of a 12-inch diameter drainage pipe buried diagonally across appellees' property. Thierwechter claimed a right-of-way across the property by virtue of an oral agreement with the owner of the property before appellants. The pipe had been in place, according to Thierwechter, since 1959. Moreover, Thierwechter reported, appellants were well aware of the pipe.
 {¶ 7} Discovery of the drainpipe across appellees' land precipitated a redesign of the subdivision plan, resulting in a delay and substantial cost to appellees.
 {¶ 8} On May 9, 2000, appellees sued appellants and David Thierwechter in the action that underlies this appeal. Appellees alleged that appellants willfully breached the covenants of the warranty deed. Appellees coupled a quiet title action directed to Thierwechter in their complaint.
 {¶ 9} Following discovery, appellants and appellees filed cross-motions for summary judgment. When the court denied both motions, the matter proceeded to a trial to the court. On the day the trial commenced, appellees reached an accommodation with Thierwechter who was dismissed from the suit. At the conclusion of the trial, the court found that appellants not only breached their warranty covenants, but knowingly concealed a material fact from appellees in the transaction. The court awarded appellees the damages they sought, punitive damages and attorney fees.
 {¶ 10} From this judgment, appellants now bring this appeal. Appellants set forth the following three assignments of error:
 {¶ 11} "1. The common pleas court erred in denying appellants' motion for summary judgment.
 {¶ 12} "2. The common pleas court's judgment is not supported by the facts and is contrary to law.
 {¶ 13} "3. The common pleas court erred in awarding punitive damages."
 Summary Judgment {¶ 14} In their first assignment of error, appellants insist that this matter should have never gone to trial because they should have prevailed on their motion for summary judgment.
 {¶ 15} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 {¶ 16} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 17} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 {¶ 18} Appellants maintain that they were entitled to summary judgment because, on the undisputed facts before the court at the time of the motion, appellees failed to demonstrate any breach of the general warranty deed. According to appellants, the only possible breach of the warranty deed would be that the property conveyed was not, "* * * free from all encumbrances * * *." R.C.5302.06. To avoid summary judgment on the breach issue, appellees must show that the land conveyed was encumbered.
 {¶ 19} At issue is the classification of the path of the pipe crossing appellees' property. If the pipeline exists by virtue of a license, such an interest is revocable at will. Rodefer v.Pittsburgh, Ohio Valley Cincinnati R.R. Co. (1905),72 Ohio St. 272, 281. A license does not constitute an encumbrance and would not violate the warranties of a general deed. Wilkins v.Irvine (1877), 33 Ohio St. 138, 145. If, however, the pipe crosses the property at issue under an easement granted by appellants' predecessor in interest or created in some other manner, such an easement is an encumbrance, see Ohio Edison v.Dessecker (1993), 89 Ohio App.3d 164, 168, in violation of the general warranties.
 {¶ 20} Easements may be created by express grant, by implication, by prescription or by estoppel. Kamenar R.R.Salvage Co. v. Ohio Edison Co. (1992), 79 Ohio App.3d 685, 689. For the creation of an express easement, there must be an agreement included in the language of the deed, lease or other instrument of conveyance and it must be recorded in conformity with R.C. 5301.01. Id. An easement by implication requires a unity, then severance of ownership of an estate. Id., citingCiski v. Wentworth (1930), 122 Ohio St. 487, paragraph one of the syllabus. It is apparent that the interest at issue is neither an express easement or an easement by implication.
 Easement by Estoppel {¶ 21} More to the point are the constructs of easement by estoppel and prescriptive easement. An easement by estoppel may be found when an owner of property misleads or causes another in any way to change the other's position to his or her prejudice.Monroe Bowling Lanes v. Woodsfield Livestock Sales (1969),17 Ohio App.2d 146, 149. "Where an owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights, he is estopped to deny the easement." Id. at 151.
 {¶ 22} A more modern, and slightly broader, statement of the doctrine is contained in Section 2.10(1) of the Restatement of Property:
 {¶ 23} "If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is estopped to deny the existence of a servitude burdening the land when:
 {¶ 24} "(1) the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief * * *." Restatement of the Law, Property 3d (2000), 143.
 {¶ 25} According to the commentary accompanying Section 2.10(1), the rule, "* * * covers the situation where a land owner or occupier gives permission to another to use the land, but does not characterize the permission as an easement or profit, and does not expressly state the duration of the permission.
 {¶ 26} A servitude is established if the permission is given under such circumstances that the person who gives it should reasonably foresee that the recipient will substantially change position on the basis of that permission, believing that the permission is not revocable." Id. at 145.
 Prescriptive Easement {¶ 27} A prescriptive easement may be acquired if the use is open, notorious, continuous and adverse under a claim of right for 21 years. Shanks v. Floom (1955), 162 Ohio St. 479, syllabus. A party claiming the existence of a prescriptive easement has the burden of proving each element of the claim.Pennsylvania R.R. Co. v. Donovan (1924), 111 Ohio St. 341, paragraph one of the syllabus.
 {¶ 28} The principle source of controversy in most prescriptive easement cases is, as here, whether the use is "adverse." As we noted in Papesh v. Gem Boat Service, Inc.
(Aug. 31, 1990), Ottawa App. No. OT-89-18, adverse use and claim of right are sometimes consolidated into the term "hostile." "Hostility," however, does not necessarily implicate a heated controversy or ill will. It is sufficient that the use be inconsistent with the rights of the owner and not subordinate or subservient to those rights. See Kimball v. Anderson (1932),125 Ohio St. 241, 244. "* * * Claim of right is referred to as a use without `let or hindrance.' This phrase has subsequently been interpreted to simply mean that the landowner did not somehow prevent the other party from using the property. If the owner does nothing to interrupt the usage of his property, but acquiesces thereto, then he is presumed to have agreed to the continued use of the property for that purpose. * * *" Papesh v.Gem Boat, supra. (Citations omitted.)
 {¶ 29} Nevertheless, "[a] permissive use can never ripen into a prescriptive easement. However, in order for a party to meet its burden of proving adverse use, it is not required to affirmatively disprove the existence of a grant of permission or neighborly accommodation given by the true owner of the property. A party claiming a prescriptive easement satisfies its burden by demonstrating a use which is inconsistent with the title owner's rights and not subordinate or subservient thereto. Use of property under a mistaken belief of ownership is sufficient to constitute an adverse use. Further, mere acquiescence by the property owner with knowledge of the use does not negate a claim for prescriptive easement; a permissive user is one who has been granted a license or permission in fact, whether expressly or by necessary implication." Gerstenslager v. Lloyd (Feb. 15, 1995), Summit App. No. 16814. (Citations omitted.)
 {¶ 30} There is a fine distinction between acquiescence of use (which can be prescriptive) and permissive use (which cannot be prescriptive). Moreover, judicial efforts to force equitable results through the "hostile" or "adverse" prism seem strained. See Shanks v. Floom, supra, at 484 and following cases.
 {¶ 31} One solution for this confusion is presented in the reformulation of the law of servitudes contained in the Restatement of Property. Section 2.16 states a rule for prescriptive servitudes:
 {¶ 32} "2.16 Servitudes Created by Prescription: Prescriptive Use
 {¶ 33} "A prescriptive use of land that meets the requirements set forth in § 2.17
 {¶ 34} [open, notorious and continuous for the prescriptive period] creates a servitude. A prescriptive use is either
 {¶ 35} "(1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or
 {¶ 36} "(2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude." Restatement of the Law, Property 3d (2000), 221-222.
 {¶ 37} Comment (a) to the rule explains:
 {¶ 38} "Prescription operates in two distinct factual situations. In the first, a person begins using property without the consent or authority of the owner and acquires a servitude if the use continues for the prescriptive period and the other requirements of § 2.17 are met. In the second situation, people try to create a servitude but fail, initially because they do not fully articulate their intent or reduce their agreement to writing, or because they fail to comply with some other formal requirement imposed in the jurisdiction. If they proceed to act as though they have been successful in creating the servitude, and continue to do so for the prescriptive period, the servitude is created by prescription if the other requirements of § 2.17 are met. In this second situation, prescription performs a title-curing function. Observance of the terms of the servitude for the prescriptive period substitutes for compliance with the required formality because it provides satisfactory proof of the existence and terms of the servitude and resolves any doubts as to the parties' intent that may have been created by their failure to comply with the formality.
 {¶ 39} "Although this title-curing function of prescription has always been present in American servitudes law, the courts' and commentators' focus on statute-of-limitations theory has generated a vocabulary that tends to obscure it. Traditionally, prescriptive uses are described as necessarily hostile or adverse. To fit uses made pursuant to oral grants or other intended, but imperfectly created, servitudes within the hostile or adverse category, courts and commentators explain that the use derogates from the owner's title, or that the use is adverse because it can be made wrongful by revocation of the license created by the imperfect servitude. Although these explanations work most of the time, courts occasionally take the hostile requirement literally and reach the erroneous conclusion that use pursuant to an oral grant cannot give rise to a prescriptive right because it is not adverse." Id. at 222-223.
 {¶ 40} Although it would certainly simplify our analysis, we need not expressly adopt the Restatement view in this matter. On motion for summary judgment, the trial court had before it the deposition testimony of David Thierwechter who recounted the circumstances that led to his installation of the drainage pipe:
 {¶ 41} "A Harvey Gooderman was the owner of the property at that time, and he knew my plans and conceded to it.
 {¶ 42} "Q You just —
 {¶ 43} "A Added a little bit more, I think originally there was some kind of a tile in that prior to that, a smaller one, perfectly fine.
 {¶ 44} "Q So you talked to Mr. Gooderman about putting this drain tile across his property?
 {¶ 45} "A Oh, yes, with his blessing, he had a little bit and he wanted to add to it, he was very pleased.
 {¶ 46} "* * *
 {¶ 47} "Q You just wanted an easement across this property to drain yours?
 {¶ 48} "A I explained my problem, he was very nice about it, he said it would work out fine.
 {¶ 49} "Q Did you have to pay him for any rights to do that?
 {¶ 50} "A No.
 {¶ 51} "* * *
 {¶ 52} "Q Can I ask why you never put this in writing with Mr. Gooderman?
 {¶ 53} "A In those days they didn't do those things like they do today. It was not unusual to have it drain through your neighbors, he told me what to do, he said go ahead and do it, just take care of me."
 {¶ 54} Thierwechter testified that, following this exchange in 1959, he hired a contractor to install the 900 foot long drainage pipe across the land at issue. Certainly, under Restatement Section 2.16(2), this testimony would establish a prescriptive servitude. Moreover, we note that the burial of a 12 inch diameter pipe, 900 feet long, involves a not insubstantial cost. Applying either Restatement Section 2.10(1) or Ohio case law, an easement by estoppel was created by the transaction between Thierwechter and appellants' predecessor in interest. Given this, we cannot say that the trial court erred in denying appellants' motion for summary judgment.
 {¶ 55} Accordingly, appellants' first assignment of error is not well-taken.
 Sufficiency of Evidence {¶ 56} Appellees settled their quiet title claim with David Thierwechter on the morning of the trial. As a result, Thierwechter did not testify at trial. His deposition testimony was not admitted into evidence.
 {¶ 57} In their second assignment of error, appellants maintain that, absent the Thierwechter testimony, appellees failed to present evidence sufficient to establish an easement by implication, prescription or estoppel. Moreover, appellants insist, the trial court's judgment entry stated that appellees could have ignored the drain tile and have Thierwechter remove it is inconsistent with a finding of any easement.
 {¶ 58} Appellants cannot prevail on this assignment of error for a number of reasons. First, as we indicated in our decision on appellants' first assignment of error, it appears that appellees established an easement by estoppel using either the Restatement or Ohio common law formulation of that construct. Moreover, using the Restatement definition of a prescriptive easement, that encumbrance was established by appellees in summary judgment. For these reasons, we believe that the trial court should have issued a partial summary judgment to appellees at that point.
 {¶ 59} As far as the trial goes, Thierwechter's letter to appellees asserting a property interest was introduced into evidence, as well as testimony that the drainage pipe had been there since 1959. It was undisputed that the pipeline was open, notorious and continuous. Thierwechter's letter constitutes a claim of right and the testimony concerning the 1959 installation date establishes the 21 year prescriptive period. This is evidence which, if believed, establishes a prima facie claim of a prescriptive easement under any formulation.
 {¶ 60} Using the Restatement formulation, such evidence would be conclusive of the existence of a prescriptive easement. Under existing Ohio case law, the prima facie case may be negated by proof that the use was permissive. The proponent of the prescriptive easement, however, is not required to affirmatively disprove a grant of permission. Papesh v. Gem Boat Service,Inc., supra; Gerstenslager v. Lloyd, supra. The burden is on the party opposing the prescriptive easement to come forth with evidence that the use was permissive. See Goldberger v. BexleyProperties (1983), 5 Ohio St.3d 82, 84; Gioia v. CardinalAmerican Corp. (1985), 23 Ohio App.3d 33, 39.
 {¶ 61} In this matter, the only direct evidence in the case that might arguably be construed as proof of permissive use is contained in Thierwechter's deposition which was not admitted into evidence. Accordingly, appellants' second assignment of error is not well-taken.
 Punitive Damages {¶ 62} In their final assignment of error, appellants contend that the trial court erroneously awarded punitive damages. The parties agree that the applicable law in this matter is contained in R.C. 2315.21. In material part, that statute provides that punitive or exemplary damages may be awarded in a tort action when,
 {¶ 63} "* * * both of the following apply:
 {¶ 64} "(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
 {¶ 65} "(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions * * *."
 {¶ 66} Evidence that a defendant knowingly concealed a material fact is sufficient to support a finding of fraud. SeeLogsdon v. Graham Ford Co. (1978), 54 Ohio St.2d 336, 340. For exemplary or punitive damages to be awarded, however, there must be a properly supported finding that the aggrieved party's damages were the result of more than simple fraud. Id. at 339. The type of "aggravated or egregious" conduct necessary to support punitive or exemplary damages must be malicious, conspicuously bad, flagrant or outrageous. Romp v. Haig (1995),110 Ohio App.3d 643, 646. "[T]he malice required for the award of punitive damages consists of `(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" Id., quoting Preston v. Murty
(1987), 32 Ohio St.3d 334, syllabus.
 {¶ 67} The trial court addressed the egregiousness issue as follows:
 {¶ 68} "What was the aggravated nature of [appellants'] fraud?
 {¶ 69} "1.) [Appellants] knew of the presence of the 12-inch tile when they purchased the land and when they sold it to [appellees.]
 {¶ 70} "2.) [Appellants] were experienced in real estate transactions and [appellees] were not, and [appellants] knew [appellees] were young and inexperienced.
 {¶ 71} "3.) [Appellees] only wanted to purchase a limited residential parcel from [appellants] which was not encumbered by the 12-inch tile.
 {¶ 72} "4.) [Appellants] talked to [appellees] into buying the greater parcel totaling 28.5 acres knowing [appellees] could not afford it and encouraged [appellees] to subdivide the land in order to recoup the greater purchase price.
 {¶ 73} "5.) [Appellants] knew the 12-inch tile ran under the land to be subdivided.
 {¶ 74} "6. [Appellant] Donald L. Zimmerman was not a credible witness at trial."
 {¶ 75} As we must, we will not disturb a trial court's findings of fact if such findings are supported by competent credible evidence. C.E. Morris v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. In this matter, the court's findings are so supported. In considering the court's conclusion that these facts constitute an egregious form of fraud, however, we must note that it is also undisputed that it was appellee Mark Schmiehausen's father-in-law who first raised the possibility of purchasing extra land, not appellants. Moreover, while there was evidence that appellants knew of the presence of the 12-inch pipe, there was no evidence that appellants knew that the pipe constituted a significant hindrance to appellees' plans to subdivide the land
 {¶ 76} Even accepting the trial court's findings, we cannot agree that these findings support a conclusion that appellants' acts were motivated by actual malice. Neither can we conclude that appellants' conduct was grossly outrageous or flagrant. Accordingly, appellants' third assignment of error is well-taken.
 {¶ 77} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded for further consideration consistent with this decision. Costs to be divided equally between appellants and appellees.
Judgment affirmed, in part, and reversed, in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, J. concur.
Lanzinger, J., dissents in part and concurs in part.