DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the March 25, 2004 judgment of the Ottawa County Court of Common Pleas, which held that appellees, Phillip A. and Susan T. Bittner, had acquired a non-exclusive prescriptive easement to utilize a 12-foot wide private lane in the Lakeview Allotment for ingress and egress to their adjoining property. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellants, all of whom are lot owners in the Lakeview Allotment, assert the following assignments of error on appeal:
 {¶ 2} "First Assignment: The Court erred and abused its discretion when it found that the eight-foot right-of-way was conveyed to Plaintiffs and lying directly east of the twelve-foot lane in question and adjoining the westerly line of lot seven is blocked by utility poles, mature trees and has never been used by vehicular or pedestrian traffic.
 {¶ 3} "Second Assignment: The Court erred and abused its discretion when it found that Plaintiffs' predecessors in title as well as all other owners, renters and visitors to the properties located in lot seven used the Lakeview lane as their own means of ingress and egress to and from the Bitner [sic] property as it was the only driveway or lane in existence since approximately 1937.
 {¶ 4} "Third Assignment: The Court erred and abused its discretion when it found that Plaintiffs' predecessors in title as well as all other owners, renters and visitors to the property located in lot seven used the Lakeview private lane as their only means of ingress and egress to and from the Bitner [sic] property as it was the only driveway or lane in existence since approximately 1937.
 {¶ 5} "Fourth Assignment: The Court erred and abused its discretion when it found that Plaintiffs' predecessors in title as well as all other persons having reason to use the lane as the only means of approach of [sic] departure from the Bitner [sic] property did so without ever asking permission.
 {¶ 6} "Fifth Assignment: The Court erred and abused its discretion when it found that the adverse use of the disputed lane was in place for more than 21 years, beginning in 1937 and continuing without interruption until permission was granted from the Association in 1991.
 {¶ 7} "Sixth Assignment: The Court erred and abused its discretion in finding that the Plaintiffs' predecessor in title first received permission to use the private lane by letter from the Association to Carol Brewer, a Bitner [sic] predecessor in title, in 1991.
 {¶ 8} "Seventh Assignment of Error: The Court in its first conclusion of law erred and abused its discretion when it held that the lane had been used continuously and in substantially the same manner for more than 60 years and that the use was open, notorious and continuous.
 {¶ 9} "Eight Assignment of Error: The Court erred and abused its discretion in holding that the Plaintiffs' predecessors in title have used the disputed lane as the only means of getting to and from the Bitner property from 1937 until the Association issued its first letter of permission in 1991 and that the use was adverse.
 {¶ 10} "Ninth Assignment of Error: The Court erred and abused its discretion in holding that the rights to a prescriptive easement date back to the first user and that the first users of the disputed lane dated back to 1937 and that the use was open, notorious and adverse to the owners of lots in Lakeview Allotment and continued without interruption until the first notice of permission by the Lakeview Allotment Association in 1991.
 {¶ 11} "Tenth Assignment of Error: The Court erred and abused its discretion when it held that alternatively, the 21 year period of time can be construed to begin with the ownership of May Johnson on August 16, 1967 and continuing until the date of permission in 1991."
 {¶ 12} Appellees asserted in their complaint that they had acquired a prescriptive easement to a private lane in Lakeview Allotment. Appellees sought to enjoin appellants from interfering with appellees' use and enjoyment of the private lane. The private lane is a 12-foot strip of land lying entirely within Lakeview Allotment and immediately southwest of the boundary between Lakeview Allotment and Bittners' property. The private lane runs from County Road 152 to the shore of Lake Erie and is shown as a private lane on the Plat of Lakeview Allotment. Appellees asserted that they and their predecessors in title have used the private lane openly, continuously, notoriously and adversely to the property rights of appellants and their predecessors in title for more than 21 years immediately preceding the filing of their complaint. Appellants are several lot owners of Lakeview Allotment who opposed appellees' claims.
 {¶ 13} Both parties filed for summary judgment and both motions were denied. The case then proceeded to trial. The following evidence was presented at trial.
 {¶ 14} John Ladd testified that he was born in 1932 on Put-in Bay and left in 1962. During the period of 1950-1957, he was away from the island while attending college and serving in the military. After his retirement in 1992, he purchased the family home in Put-in-Bay where he now resides.
 {¶ 15} Ladd's family home is located on County Road 152 almost directly across from the point where the private lane intersects with County Road 152. He testified that he recalled walking the private lane to go to other homes in 1937, including the Bittner property where his grandparents lived. He recalled driving on the private lane as well. He knew that others, including his grandparents, would also use the private lane as well. The private lane was the only driveway he could recall from the Bittners' property going out to County Road 152.
 {¶ 16} Ladd also lived in the Bittner home when he was older and used the private lane to access the property until Ladd left the island in 1969. After his return to the island in the 1990s, he saw that the private lane was still being used in the same manner. While he only visited the area from 1969 through 1992, he could testify that when he was there, he saw the private lane being used as it always had been used.
 {¶ 17} Henry Polcyn testified that he had lived on Put-in-Bay Island for nearly 20 years. He vacationed there beginning in the late 1950s. Beginning in 1965, his family rented a place in Lakeview Allotment during the summer. In 1967, his parents purchased the same property for their permanent residence. The only way to get to their property was to use the private lane. During the time that Polcyn lived there, the Bittner property was owned by the Johnsons and Wayne Denny. Polcyn knew that both owners used the private lane to get to their home. He was not aware if they used the private lane all the way to the lake.
 {¶ 18} Polcyn moved away from the area in the mid 1970s, but still lived on the island. He continued to use the private lane when he took drives around the island. Polcyn testified that recent photographs of the private lane look very similar to how the private lane looked when he used to live there. No one ever gave him permission to use the private lane and no one ever prevented him from using it.
 {¶ 19} Phillip Bittner testified that he purchased his property in 1993. He uses the private lane, which is one and one-half feet from his house, to get from the front area of his property to the nearest public road. His deed and title work referenced an eight-foot right-of-way, which he presumed was the private lane because there was no other means of access to the public road. However, he never conducted a survey prior to purchasing the property. He learned that the private lane was not the right-of-way referenced in his deed after he moved into his house in 1994. Aurelio Ferrarini, a lot owner in Lakeview Allotment, came by and told Bittner that he was allowed to use the private lane only because of the goodness of his neighbors. Bittner also testified that the private lane is primarily used by the three property owners whose property is adjacent to the private lane, but outside of Lakeview Allotment. He also testified that some of the Lakeview Allotment lot owners adjacent to the private lane have added shrubbery or fences that block access to their property from the private lane.
 {¶ 20} According to Bittner, utility poles and several mature trees now block the eight-foot right-of-way. He presumed that the utility poles had been in place since the 1930s when electricity became available on the island. He also testified that he had inquired of other lot owners if there was any other way to access his property. Neither he nor they knew of another way.
 {¶ 21} On behalf of the defense, the following evidence was presented. Richard J. Martin, a Lakeview Allotment property owner, testified that he owns five lots purchased from Ralph Samson in 1981. He testified that the private lane is grass from the Bittners' house to the lake. Ray Stoney and Larry Ferrarini generally mow this area. Sewer lines run under the private lane to several properties. The most recent was installed three years ago. The others were probably installed two or three years before that. Martin also testified that his children use the private lane to access other properties abutting the private lane.
 {¶ 22} Raymond Kowalski, a Lakeview Allotment lot owner whose lot is adjacent to the Bittner property, testified that Mildred Beacon who lived in Lakeview had told him in 1977 or 1978 to use the private lane to get to her house in order to do work for her.
 {¶ 23} Raymond Stoney, a lot owner in Lakeview Allotment, testified that he purchased one lot in 1982, which is adjacent to the private lane and closer to the lake than Samson's lots. Later, in 1990, Stoney purchased Samson's three adjacent lots. He lives on the island from April through October. Since he first moved to the area, Stoney has used the private lane constantly for entry to his property. His other alternative entry would require that he drive over a drain field. He also uses the sewer lines under the private lane. He and Ferrarini take turns cutting the grass in the area near the lake because Bittner only has it cut twice a month and they do not like to see the grass that long.
 {¶ 24} Mary Lou Ramsbottom, a Lakeview Allotment lot owner, testified that she has lived in Lakeview since 1976, and continuously from 1989. She uses the private lane constantly for access to her garage. She knew that the owners of the lots adjacent to the private lane, but not part of the Lakeview Allotment, have also used the private lane to access their property.
 {¶ 25} In 1991, Ramsbottom sent a letter, on behalf of the Lakeview Allotment lot owners, to Carol Brewer notifying her that the private lane belonged to the Lakeview Allotment and that Brewer was entitled to use the private lane with the consent of the Lakeview Allotment lot owners. She sent the letter in response to a letter from Brewer. Brewer was the niece of Marge Smiley, who was the prior owner of the Bittner property. After Smiley's death, Brewer accused Ramsbottom of wrongfully using the private lane. Ramsbottom also sent letters to the other property owners in front of the Bittner's property to notify them that the private lane belonged to the Lakeview Allotment lot owners.
 {¶ 26} Jeffrey Ramsbottom, a lot owner since 1987, testified that he authorized his mother to send the letter to Brewer and the other lot owners who were using the private lane. After a meeting of the lot owners, the lot owners agreed to send the letter.
 {¶ 27} Aurelio Ferrarini testified that he has been on the island since 1959, and a lot owner in Lakeview Allotment since 1972. When he first moved in, he knew that no one was allowed to use the private lane from his property down to the lake. Ralph Samson owned several lots along the private lane about halfway between the country road and the lake. He would not let anyone use the private lane past the point where it met the Bittners' property. This area was all grassy and Samson did not want it toren up. Ferrarini, however, would use the private lane when Samson was not there. In 1980, Samson allowed Marge Smiley, predecessor in title to appellees, to use the private lane to park at the front of the house facing the lake in exchange for mowing Samson's grass. Ferrarini also gave Smiley permission to use the private lane.
 {¶ 28} In 1976 or 1977, Ferrarini put up a fence across his two lots and Haines Avenue to prevent someone from crossing his property to get to Haines Avenue. In 1976, he knew that the owners of the lots adjacent to the private lane would get to their homes by driving on the opposite side of their properties. They did not use the private lane because Samson would not let them. After Smiley could use the private lane, she put in a propane tank on the opposite side of her house. Today, Ferrarini or Stoney mow the grass down to the lake.
 {¶ 29} The trial court made the following findings of fact. When the Bittners acquired their lots, they also acquired a nonexclusive right to use an eight-foot wide right-of-way from the county road to the east side of their home. This right-of-way cannot be used, however, because a utility pole and mature trees block it. It has never been used by vehicular traffic.
 {¶ 30} On the west side of the Bittner property is the Lakeview Allotment, which includes a 12-foot wide private lane that abuts the Bittner property. The private lane is owned in common by all of the Lakeview Allotment lot owners. The private lane has been in use by the Lakeview Allotment lot owners and visitors as the only means of ingress and egress to and from the Bittner property since approximately 1937. The prior owners of the Bittner property and their visitors did not conceal their use of the private lane to get to their property.
 {¶ 31} Beginning in 1937, the use of the private lane continued for more than 21 years until 1991 when the Lakeview Allotment lot owners sent a letter consenting to the use of the private lane. Various lot owners attempt to grant or deny permission to certain individuals to use the private lane. However, these individual lot owners did not have any authority to permit or deny use of the private lane.
 {¶ 32} The court concluded that the Bittners had acquired a prescriptive easement to use the private lane to access their property.
 {¶ 33} A landowner asserting a prescriptive easement for a specific use has the burden of establishing by clear and convincing evidence that he openly, notoriously, continuously, and adversely used an adjacent property owner's property for at least 21 years. Shanks v. Floom (1955),162 Ohio St. 479, syllabus; J.F. Gioia, Inc. v. Cardinal American Corp.
(1985), 23 Ohio App.3d 33, 36-37; and Schmiehausen v. Zimmerman, 6th Dist. App. No. OT-03-027, 2004-Ohio-3148, at ¶ 27.
 {¶ 34} Many of appellants' assignments of error challenge that the trial court's factual findings were against the manifest weight of the evidence. On appeal, we must uphold the trial court's judgment if it is "* * * supported by some competent, credible evidence going to all the essential elements of the case * * *." C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. The trial court alone determines the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Other assignments of error involve challenges to the court's legal conclusions. These issues are questions of law, which we review de novo. Morris v. Andros,158 Ohio App.3d 396, 2004-Ohio-4446, at ¶ 18.
 {¶ 35} In their first assignment of error, appellants argue that the evidence does not support the trial court's factual finding that the eight-foot right-of-way has never been used by vehicular traffic.
 {¶ 36} We find that this factual finding was supported by the testimony of Ladd, Polcyn, and Bittner. They testified that the prior owners of and visitors to the Bittners' property have used the private lane as the only means of access to the property; that the eight-foot right-of-way is currently blocked by utility poles and mature trees; and that electricity.
 {¶ 37} was available to the island in the 1930s. From this evidence, the trial court could reasonably infer that the right-of-way has been blocked since 1937. Since there was evidence to support the court's factual finding, we must affirm the court's finding.
 {¶ 38} Appellants' first assignment of error is not well-taken.
 {¶ 39} In their second assignment of error, and their identical third assignment of error, appellants argue that the trial court erred in making the factual finding that appellees' predecessors in title as well as all other owners, renters and visitors used the private lane as their only means of ingress and egress to and from the Bittner property since 1937.
 {¶ 40} We find that this factual finding is also supported by the testimony of Ladd, Polcyn, and Bittner. Only Ferrarini testified that the property owners adjacent to the private lane and outside of Lakeview Allotment were forced by Samson to drive on the opposite side of their houses on the grass. However, Ferrarini's testimony that the private lane was blocked by Samson from 1959 until 1991 was contradicted by the testimony of Ladd, Polcyn Martin, Kowalski, Stoney, and Ramsbottom, who testified that they used the private lane during this time and/or that others used the private lane. We cannot disturb the trial court's credibility determinations. Again, we find that there was evidence to support the court's factual finding.
 {¶ 41} Appellants' second and third assignments of error are not well-taken.
 {¶ 42} In their fourth assignment of error, appellants argue that the trial court erred in making the factual finding that the predecessors in appellees' title and their visitors used the private lane without permission.
 {¶ 43} Ladd testified simply that he used the private lane. Polcyn specifically testified that he never had permission to use the private lane because the issue never came up. While Ferrarini testified that Samson somehow blocked the use of the private lane, there was no evidence that Samson spoke on behalf of all of the lot owners. It was not until 1991 that the Lakeview Allotment lot owners attempted to prohibit adverse use of the private lane. Appellants have not cited to any case that supports their theory that a 5/44th lot owner can speak on behalf of the other 39 lot owners. The burden of proving that the use was only by permission was upon appellants. Pavey v. Vance (1897), 56 Ohio St. 162, paragraph one of the syllabus.
 {¶ 44} We find that there was sufficient evidence to support the trial court's finding that the lane was used without permission. Appellants failed to prove that the use of the private lane from 1937 to 1991 was only with the permission of a majority of the lot owners in Lakeview Allotment. Appellants' fourth assignment of error is not welltaken.
 {¶ 45} In their fifth assignment of error, appellants contend that the trial court erred when it found that the adverse use of the disputed private lane was in place for more than 21 years, beginning in 1937 and continuing without interruption until permission was granted from the Association in 1991.
 {¶ 46} Ladd testified that he, his grandparents, and others used the private lane to access the Bittners' property as far back as 1937 and continuing until 1969. Ladd also testified that he observed during his occasional visits to the island after 1969 that the use of the private lane had not changed. Polcyn testified that from 1967 until the mid 1970s, he used the private lane and saw appellees' predecessors in title using the private lane. Even after he left the area, Polcyn continued to live on the island and used the private lane whenever he wanted to do so. According to Ferrarini, Smiley, the immediate predecessor in title to appellees, used the private lane to access the lakeside portion of her property, albeit with the "permission" of Samson from 1980 until her death in approximately 1991.
 {¶ 47} Although there may have been small gaps of time that were not accounted for, a reasonable inference can be made that the private lane was continually used to access the Bittner property. First, the private lane was used prior to and after each gap of time for access to the Bittners' property. Second, there was no other means of access available to appellees' predecessors in title.
 {¶ 48} We conclude that there was sufficient evidence to support the trial court's finding that the private lane had been used adversely from 1937 until 1991. Appellant's fifth assignment of error is not well-taken.
 {¶ 49} In their sixth assignment of error, appellants argue that the trial court erred in finding that appellees' predecessors in title did not receive permission to use the private lane until Carol Brewer sent Smiley a letter on behalf of the Association 1991.
 {¶ 50} Again, appellants' assignment of error is premised solely upon the evidence that Samson blocked the use of the private lane by adjoining lot owners. We have already held that a majority of the Lakeview Allotment lot owners did not authorize this action.
 {¶ 51} Therefore, Samson's "permission" to use the private lane does not interrupt the continuing adverse use of the private lane. Appellant's sixth assignment of error is not well-taken.
 {¶ 52} In their seventh assignment of error, appellants argue that the trial court erred in concluding as a matter of law that the private lane had been used continuously and in substantially the same manner for more than 60 years. We disagree. Having found that the trial court's factual findings are supported by the evidence, we concluded that there was clear and convincing evidence presented in this case to support the court's legal conclusion that the private lane had been used by the predecessors in title in order to access their property from 1937 until 1991. Appellant's seventh assignment of error is not well-taken.
 {¶ 53} In their eighth assignment of error, appellants argue that the trial court erred in holding that appellees' predecessors in title have adversely used the private lane. Appellants argue that the use of the private lane by appellees' predecessors in title was permissive from 1980 to the present. We disagree. While Samson attempted to control a portion of the private lane, he had no authority to do so. Appellants' eighth assignment of error is not well-taken.
 {¶ 54} In their ninth assignment of error, appellants argue that the trial court erred in holding that the right to a prescriptive easement began in 1937 and continued openly, notoriously, and adversely to the owners of lots in Lakeview Allotment until 1991.
 {¶ 55} Again, the focus of appellants' argument is that that there was insufficient evidence to establish that the prescriptive easement dates back to the first adverse user.
 {¶ 56} While the court held that the prescriptive easement began with the first adverse use in 1937, it also held that the adverse use continued until 1991. Essentially, this assignment of error again addresses the issue of whether the predecessors in title abandoned their use of the private lane when Samson allegedly blocked their use of the private lane. Based on the need for a determination of the credibility of the witnesses and the reasonable inferences taken from the evidence, we concluded that there was sufficient evidence to support the trial court's finding that the use of the private lane was never abandoned. Therefore, appellants' ninth assignment of error is not well-taken.
 {¶ 57} In their tenth assignment of error, appellants argue that the trial court erred when it held that, alternatively, "the 21 year period of time can be construed to begin with the ownership of May Johnson on August 16, 1967 and continuing until the date of permission in 1991." Again, appellants argument is centered around the trial court's statement of law that Samson could not speak on behalf of the Lakeview Allotment and prohibit use of the private lane. Regardless of when the Lakeview Allotment Association was created, Samson could not speak on behalf of all the lot owners simple because he owned some of the lots adjacent to the private lane. There is no evidence that the other lot owners knew of and agreed to Samson's actions. Appellants bore the burden of proof on this issue and failed to establish that the use was permissive. Appellants' tenth assignment of error is not well-taken.
 {¶ 58} Having found that the trial court did not commit error prejudicial to appellants and that substantial justice has been done, the judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are hereby ordered to pay the court costs incurred on appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., Concur.