**WOOD et al., Appellees,**

v.

**VILLAGE OF KIPTON, Appellant, et al.**

[Cite as *Wood v. Kipton,* 160 Ohio App.3d 591, 2005-Ohio-1816.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 04CA008538.

Decided April 20, 2005.

592

John L. Keyse–Walker, for appellees.

Daniel D. Mason, for appellants.

Thomas M. Mangan, Assistant Lorain County Prosecuting Attorney, for amicus curiae.

SLABY, Presiding Judge.

{¶ 1} Appellant, the village of Kipton, appeals the decision of the Lorain County Court of Common Pleas granting declaratory judgment and quieting title to certain property in appellees, Brian and Kimberly Wood. We reverse the judgment of the trial court and enter judgment on behalf of the village of Kipton and against the Woods.

{¶ 2} The property at issue is a paved road that bisects a parcel of real property owned by appellees in the village. The Woods claim that the portion of the road that runs through their property is private. Appellant, the village, maintains that the road is public and that it is a section of Haigh Road, a public thoroughfare running through the village.

{¶ 3} On September 5, 2001, the Woods filed the instant lawsuit seeking a declaratory judgment quieting title to the property. The village opposed the Woods' claim, arguing (1) that the road in question had been dedicated a public road, (2) that the public had acquired a prescriptive easement over the Woods' property, and (3) that two deeds, recorded by the Woods' predecessors in interest, granted the public the right to use the road. The trial court issued a preliminary injunction prohibiting the public from using the portion of the road that bisected the Woods' property.

{¶ 4} The matter proceeded to a bench trial on December 11, 2002. At that trial, the village tried to introduce documents contained in a book maintained by the Lorain County Engineer and entitled "Lorain County Road Record Book B." The village maintained that documents in the record book show that the disputed section of the road was established as a public road known as Haigh Road in 1861. The Woods objected to the introduction of the documents, and the trial court excluded the documents.

{¶ 5} On February 26, 2003, the trial court entered judgment in favor of the Woods. The court issued a judgment quieting title to the property, ejecting the village, and permanently enjoining the public from further passage through the Woods' property.

{¶ 6} The village appealed that decision, stating that the trial court had wrongfully excluded the documents. In *Wood v. Kipton,* 9th Dist. No. 03CA008253, 2003-Ohio-7199, 2000 WL 34227524 ("*Wood I*"), this court reversed the decision of the trial court, holding that the documents were admissible, and remanded the case to the trial court.

{¶ 7} On remand, both the Woods and the village filed briefs. On July 19, 2004, the trial court entered judgment in favor of the Woods and against the village.

{¶ 8} The village appeals the decision of the trial court, asserting four assignments of error for our review. For ease of discussion, we will address the assignments of error out of order.

## ASSIGNMENT OF ERROR I

The trial court erred in interpreting this court's earlier decision and should have found that this court had ruled in the prior appeal that exhibits F–1 to F–4 showed that the disputed property was established as a public road in 1861 via statutory appropriation.

{¶ 9} In its first assignment of error, the village claims that the trial court erred in interpreting this court's decision in *Wood I.* The village maintains that in *Wood I,* this court held that exhibits F–1 to F–4 showed that the disputed property was established as a public road in 1861. We disagree.

{¶ 10} The first assignment of error in *Wood I* stated, "The trial court erred when it rejected as evidence Lorain County Road Record Book B, an official record of the Lorain County Engineer (a record which is statutorily mandated by [R.C.] 5553.10)." This court agreed that the documents should have been admitted into evidence and remanded the case to the trial court.

{¶ 11} This court did not enter judgment in *Wood I* for the village. We stated, "Had Appellants [the village] been permitted to submit Exhibits F–1 to F–4 into evidence, they *could* have shown that the disputed property was established as a public road in 1861 * * *." (Emphasis added.) Id. at ¶ 27. We did not expressly state that the disputed property was a public road. We stated that the village would be able to present evidence to that effect upon remand. We did not direct the trial court that exhibits F–1 through F–4 conclusively established that the road was dedicated a public thoroughfare. We simply found that the village

had been prejudiced by the exclusion of the evidence and directed the trial court to admit the documents. Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

The trial court erred when it rejected the Village of Kipton's proof that it acquired an easement by prescription to that portion of Haigh Road which runs through the property of [appellees].

■ {¶ 12} In its third assignment of error, the village maintains that the trial court erred when it rejected proof that the village had acquired an easement by prescription to the section of Haigh Road at issue. We agree.

■ {¶ 13} "[G]overnmental entities may acquire title to land by adverse possession." *State ex rel. AAA Investments v. Columbus* (1985), 17 Ohio St.3d 151, 152, 17 OBR 353, 478 N.E.2d 773. The elements of adverse possession are the same as the elements of a prescriptive easement. Accordingly, a municipality may acquire a prescriptive easement over the property of another. The Ohio Supreme Court "has long recognized that ' * * * roads and streets may be established by prescription.' " Id. at 152, 17 OBR 353, 478 N.E.2d 773, quoting *RR. Co. v. Roseville* (1907), 76 Ohio St. 108, 117, 81 N.E. 178. A prescriptive easement occurs when one can prove that he has used the land of another (a) openly, (b) notoriously, (c) adversely to the property owner's rights, (d) continuously, and (e) for at least 21 years. *Gerstenslager v. Lloyd* (Feb. 15, 1995), 9th Dist. No. 16814, 1995 WL 66284, at 3.

{¶ 14} The village has submitted evidence showing that Haigh Road, including the portion that bisects the Woods' property, was established as a public road in 1861. The Woods argue that the documents from 1861 do not conclusively confirm the establishment of Haigh Road as a public road. However, the village claims that even if we find that the road was not established as a public road in 1861, it has acquired a prescriptive easement over the property at issue. We agree that, at a minimum, the village has a prescriptive easement over the Woods' property.[1]

■ {¶ 15} Assuming that Haigh Road had not been statutorily appropriated in 1861 as a public road, we will focus on whether the village has acquired a prescriptive easement over the portion of the Woods' property that Haigh Road crosses. As mentioned above, the village must prove that it has used the land at issue openly, notoriously, adversely, and continuously for at least 21 years. *Hindall v. Martinez* (1990), 69 Ohio App.3d 580, 583, 591 N.E.2d 308. The party

---

1. We make no ruling on whether the road was statutorily appropriated as a public road in 1861.

claiming an easement by prescription must prove each element by clear and convincing evidence. *Coleman v. Penndel Co.* (1997), 123 Ohio App.3d 125, 131, 703 N.E.2d 821.

{¶ 16} The village submitted evidence showing that it had met the requirements for a prescriptive easement. Al Buck, who has been a resident of the village for half a century and is now its clerk-treasurer, testified that Haigh Road has been used as a public thoroughfare since at least 1955. Buck also served as the mayor of the village on three separate occasions, the first of which was in 1959. Buck testified that he was familiar with Haigh Road. When shown a map of Haigh Road, Buck testified that it was configured in 1958 in the same way that it is today, bisecting what is now the Woods' property.

{¶ 17} Buck explained that the village was incorporated in 1958, and since that time the village has maintained Haigh Road, including the portion that now bisects the Woods' property. Buck testified that at least from the time he moved to what is now the village in 1955 until the village was incorporated, Camden Township maintained the road.[2] The village has regularly resurfaced and plowed the road. The evidence shows that Haigh Road has been used openly, notoriously, and continuously from 1955.

{¶ 18} As to the final element of a prescriptive easement, that the use is adverse to the property owner, Buck testified that no permission had been given to use the property as a road from 1955 until 1979.

MR. GURCHIK: Are you aware of any documents prior to 1979 which granted to the Village, from the previous owners of the Kipton Elevator,[3] any permission to use that property?

MR. BUCK: No.

MR. GURCHIK: So as far as you're aware of, the Village of Kipton has always maintained that property since the Village of Kipton was incorporated?

MR. BUCK: Yes,

MR. GURCHIK: And prior to that time, it was the Village—or the Township of Camden that maintained the road?

MR. BUCK: Yes.

MR. GURCHIK: And you know that from having lived there—

MR. BUCK: Yes.

---

2. Camden Township might have been maintaining the road long before 1955, but Buck can testify from personal knowledge only from 1955 to the present.

3. Kipton Elevator was one of the previous owners of what is now the Woods' property, and at the preliminary-injunction hearing at which Buck testified, the land at issue was known as "Kipton Elevator."

MR. GURCHIK:—since 1955?

MR. BUCK: Yes.

{¶ 19} Upon cross-examination, Buck testified that there were no documents that granted the village a right of way or easement or permission to use the road in question until 1979. The Woods have not contested that the use of the road from 1955 to 1979 was without permission and thus adverse. Since the road had been used without permission from the property owners since 1955, we may infer that the use was adverse to the rights of the property owners.

{¶ 20} "Where one uses a way over the land of another without permission * * * and continues to do so with the knowledge of the owner, such use is, of itself, adverse * * *." *Pavey v. Vance* (1897), 56 Ohio St. 162, 46 N.E. 898, at paragraph one of the syllabus. "A party claiming a prescriptive easement satisfies its burden by demonstrating a use which is inconsistent with the title owner's rights * * *." *Schmiehausen v. Zimmerman,* 6th Dist. No. OT–03–027, 2004-Ohio-3148, 2004 WL 1367278, at ¶ 29. The village used the portion of Haigh Road at issue without permission from the owners, and its use was inconsistent with the title owners' rights to their property. Therefore, the village has clearly and convincingly established that from 1955 until 1979 the village's use of Haigh Road was adverse to the property owners.

{¶ 21} In 1979, the use of Haigh Road arguably became permissive. An affidavit made by Kipton Elevator provides that "the Elevator hereby agrees on behalf of itself and its successors and assigns that it will not in any manner interfere with the right of the public to use said Haigh Road for the same purposes of travel that the public uses other streets in the community." Thus, debatably, the use of Haigh Road became permissive when the affidavit was recorded on July 27, 1979, or on May 25, 1979, when a deed transferring the property from Straub Enterprises to Kipton Elevator was recorded that also contained a reservation of rights to the public for use of Haigh Road.

{¶ 22} By 1979, however, the village had already acquired a prescriptive easement. The use of the property had been open, notorious, and adverse to the property owners for a continuous period of 24 years before the property owners acquiesced in the village's right to use the road. Furthermore, "acquiescence by the property owner with knowledge of the use does not negate a claim for prescriptive easement." *Schmiehausen,* 2004-Ohio-3148, at ¶ 29, citing *Lloyd,* 9th Dist. No. 16814.

{¶ 23} The Woods argue that the village has not obtained a prescriptive easement to the portion of their property at issue because the use of the road was permissive. "If the landowner asserts the defense of permissive use, then

the landowner has the burden of proving the existence of his or her permission." *Carlyn v. Garn* (1995), 105 Ohio App.3d 704, 707, 664 N.E.2d 1325. Mr. Wood testified that when the village repaved Haigh Road in 1999, the mayor asked his permission to pave the portion of the road on their property.[4] Further, Mr. Wood testified that the village police sought his permission to run radar on the road.

{¶ 24} Whether those uses of the Woods' property from 1999 to the present were permissive is irrelevant. The time period for which the Woods needed to assert the defense of permissive use was from 1955 until 1979. The village has shown that the use of the property at issue at that time was adverse to the property owners' rights. To negate the element of adverseness, the Woods would have had to establish that the use of the property from 1955 until 1979 was permissive. The Woods have made no such claims. The Woods have not contested the village's assertions that the use from 1955 until 1979 was adverse. They merely point to two instances of permission from 1999 to the present.

{¶ 25} By the time the Woods purchased their property in 1998, the village had already acquired a prescriptive easement. Thus, any permission that the village might have sought from the Woods to repave or run a radar from their property was merely a courtesy. Even if the village thought that it had to get the Woods' permission to repave the road or to run a radar from the road, it would have had no effect. "A user's acknowledgment that the title holder has the paramount right will not extinguish a fully matured prescriptive easement." *J.F. Gioia, Inc. v. Cardinal Am. Corp.* (1985), 23 Ohio App.3d 33, 23 OBR 76, 491 N.E.2d 325, at paragraph six of the syllabus.

{¶ 26} The village had acquired a mature prescriptive easement in the 1970's. The only way for the prescriptive easement to be extinguished was by the title owner's obstruction of the easement in an open, notorious, adverse, and continuous manner for at least 21 years. *J.F. Gioia*, 23 Ohio App.3d 33, 23 OBR 76, 491 N.E.2d 325 at paragraph six of the syllabus. Before the instant lawsuit, the village's easement had not been obstructed in any way. From 1979, the property owners acknowledged the village's right to use the portion of Haigh Road at issue.

{¶ 27} Mr. Wood maintains that his deed did not include any language granting the village the right to use the portion of Haigh Road at issue. Whether his deed had any mention of the easement does not affect the village's prescriptive

---

4. The mayor stated that he did not ask for permission to repave the portion of the road that bisected the Woods' property; he merely asked when would be a good time to repave it so as not to interfere with the Woods' farming season.

easement. However, when the Woods purchased the property in 1998, they had notice that Haigh Road bisected their property.

MR. GURCHIK: * * * [T]hroughout all that period of time [from 1955 to the present] you would have no reason to dispute the fact that the public has used that road?

MR. WOOD: I would agree to that.

MR. GURCHIK: And when you took possession in 1998, January, was Haigh Road there? Was Haigh Road there on that property?

MR, WOOD: Yes, I'd have to say.

MR. GURCHIK: * * * [Y]ou knew that there was a roadway running right through your property?

MR. WOOD: I knew it was there.

{¶ 28} Based on the above evidence, we find that the village had acquired a prescriptive easement to use the portion of Haigh Road that bisects the Woods' property. The village has presented clear and convincing evidence that the road in question has been used by the public since 1955 in a manner that was adverse to the property owners from 1955 until 1979. It was used openly, notoriously, adversely, and continuously since at least 1955. The village had acquired a mature prescriptive easement by 1976. The public has been using the road without interruption from 1955 until the instant lawsuit.

{¶ 29} When the Woods purchased their property, the village had already acquired a prescriptive easement to use the portion of Haigh Road at issue. Furthermore, when they bought the property, the Woods knew that it was bisected by a paved road that the public was using. The only way for the Woods to now extinguish the village's easement would be to obstruct the easement in an open, adverse, and continuous manner for 21 years, which they have not done.

{¶ 30} We find that based on the facts presented by the village, each element of a prescriptive easement has been clearly and convincingly established. Thus, we vacate the judgment of the Lorain County Court of Common Pleas and enter judgment as a matter of law in favor of appellant, the village of Kipton, in accordance with App.R. 12(B).

{¶ 31} Appellant's third assignment of error is sustained.

## ASSIGNMENT OF ERROR II

The trial court erred in finding that exhibits F–1 to F–4 did not establish the disputed property was acquired by statutory appropriation.

## ASSIGNMENT OF ERROR IV

The trial court erred when it disregarded the deed reservations establishing in the public the right to use Haigh Road as it ran through the property of [appellees].

{¶ 32} Given this court's resolution of appellant's third assignment of error, its second and fourth assignments of error are rendered moot, and we decline to address them. See App.R. 12(A)(1)(c).

{¶ 33} Appellant's first assignment of error is overruled, the third assignment of error is sustained, and the second and fourth assignments of error are moot. The judgment of the Lorain County Court of Common Please is reversed, and judgment is entered in favor of appellant, the village of Kipton.

Judgment reversed.

BATCHELDER, J., concurs.

CARR, J., concurs in part and dissents in part.

CARR, J., concurring in part and dissenting in part.

{¶ 34} Although I concur with the majority that the case should be reversed, I would remand the matter to the trial court for proceedings consistent with this opinion.