OPINION
{¶ 1} Appellants, Trumbull County Engineer, et al., appeal from the judgment entry of the Trumbull County Court of Common Pleas granting appellees' petition for a writ of mandamus through which the court ordered appellants to pay damages as a result of the court's determination that appellants' appropriation of appellees' private property constituted an unconstitutional taking. We affirm. *Page 2 
 {¶ 2} Appellees, Charlene Simmons, William Creech, Donna Creech, Joseph Varmuzek, and Patricia Varmuzek, own real estate fronting on the east side of St. Rt. 534 in Newton Township, Trumbull County, Ohio. Ms. Simmons' property also fronts the north side of Hallock-Young Road. She owns approximately 4.4 acres of land with a residence; appellees Creech own land north of the Simmons' property, consisting of approximately 2 acres with a residence; appellees Varmuzek own approximately 45 acres of land north of Creechs' property.
 {¶ 3} On or about February 16, 2004, appellant Trumbull County Engineer entered the lands of the appellee property owners with a private contractor and excavated, with a backhoe and Bobcat bull dozer, a ditch from Hallock-Young Road through the appellees' properties. The ditch's purpose was to channel excess water away from Hallock-Young Road, which had recently flooded, to a drain eventually leading to a remote pond north of Vermuzek's property. Appellant County Engineer also built a catch basin on the north side of appellee Simmons' property near the contiguous property lines of appellees Simmons and Creech.
 {¶ 4} On February 17, 2004, appellees filed a complaint in the Trumbull County Court of Common Pleas seeking a temporary restraining order, preliminary and permanent injunction, and alternative relief in the form of a writ of mandamus. The complaint asked the court to enjoin appellants from cutting the ditch though their properties or, in the alternative, require appellants to file appropriation proceedings for the taking of their private property rights. The trial court denied appellees' motion for *Page 3 
temporary restraining order. Appellees subsequently appealed the trial court's denial of the temporary restraining order.
 {¶ 5} On March 31, 2004, this court dismissed the case for lack of a final appealable order. See Simmons v. Trumbull Co. Engineer, 11th Dist. No. 2004-T-0016, 2004-Ohio-1663 ("Simmons I"). In doing so, this court observed:
 {¶ 6} "* * * [T]he pivotal question that must be addressed is whether or not appellants would be afforded a meaningful or effective remedy if they had to delay an appeal until a final judgment was reached as to all issues and claims.
 {¶ 7} "It is undisputed that the Trumbull County Engineer would be acting under authority of R.C. 5543.12 by immediately entering upon the property in question to alleviate a potentially dangerous situation on a country road. Pursuant to R.C. 5543.23, if the parties could not reach an agreement as to damages, a damages hearing would then be conducted to determine what amount of restitution appellants would be entitled to due to the work on their property.
 {¶ 8} "* * *
 {¶ 9} "Based upon these facts, we must conclude that appellants will have a meaningful and effective remedy by delaying an appeal until the case is concluded. There is no indication that monetary damages would not be able to adequately compensate appellants for their loss." Id. at ¶ 8-11.[1] *Page 4 
 {¶ 10} After the dismissal order was entered, the case proceeded to bench trial on appellees' claim for mandamus. At trial, the evidence established that appellants installed the ditch across appellees' properties for purposes of handling excess water from Hallock-Young Road and surrounding properties. Both parties conceded a privately installed 8 inch field tile extended from the south side of Hallock-Young Road underneath the roadway allowing excess water to flow north over the properties of appellees Simmons and Creech prior to appellant's commencing its project. Additionally, a 15 inch culvert, installed by the County, extended under the road permitting a similar flow of excess water. Witnesses testified, prior to the excavation of the ditch, the properties possessed no preexisting trench or channel which served to carry water over appellees' respective properties.[2] In fact, appellant Latell admitted that, before the project was started, the County Engineers determined the area required a drainage area greater than that which was naturally available.
 {¶ 11} Appellant John Latell, the Trumbull County Engineer, testified that he did not prepare any plans or specifications for excavating the ditch prior to hiring a contractor. Rather, Latell developed the project in relation to the topography of the land. When the excavation began, Latell provided the contractor with a drawing of the course that the trench should follow and the contractor was instructed to keep the dimensions *Page 5 
of the ditch as "tight as they could." Notwithstanding these instructions, measurements or specifications pertaining to depth and width were not documented. Latell testified the contractors were afforded "good discretion" in the entire excavation of the ditch. After completion, the ditch varied in size and dimension. Testimony from Latell and Deputy Engineer Randy Smith indicated the ditch was, on average, from 3 to 12 feet wide and from 3 inches to 11 inches deep with 45 degree side slopes.
 {¶ 12} Appellees' expert, J. Robert Lyden, a professional engineer, testified that the manner appellants developed the plan provided insufficient definition as a construction plan. He testified Latell's base line drawing, which plotted the proposed course of the ditch, did not contain important guidelines such as side slopes, depths, and widths. Lyden testified, from his review of documents and his personal observations, the ditch did not follow any particular survey line.
 {¶ 13} Further, Lyden testified that a 24 inch culvert, located approximately 700 feet east of the subject properties, was substantially clogged at the time of the construction. The 24 inch culvert was designed to drain approximately 80 acres of land on both the north and south side of Hallock-Young Road. As a result of the blockage, Lyden testified, the excess water was diverted west thereby draining onto appellees' properties. With the additional water flowing toward appellees' properties, the volume of water also increased significantly. According to Lyden, the greater volume of water, in conjunction with the increased pressure and concentration of the water's flow, significantly accelerated erosion within the ditch and areas near its banks. *Page 6 
 {¶ 14} Appellee Charlene Simmons testified she had lived on the property since 1989. She stated her property never retained water before the county dug the ditch. In fact, Simmons testified she only witnessed water standing on her property during heavy rains; however, once the rain ceased or slowed, the water would dissipate quickly. After the ditch was excavated, Simmons testified her property is a wet "mess." Simmons also asserted she kept her property mostly mowed but, subsequent to the construction, she is unable to tend to the area near or beyond the ditch.
 {¶ 15} Appellee Donna Creech testified, prior to appellants' excavation, she only received water from appellee Simmons' property during torrential downpours. However, Creech averred that the water would dissipate within an hour. After the excavation, she stated the ditch retains water at all times. Moreover, prior to the construction, Creech testified she and her husband, William, carefully groomed their property. Now, the Creeches have great difficulty negotiating the ditch with their lawn equipment.
 {¶ 16} Richard Montgomery testified he has farmed appellee Varmuzek's land since 1990. Prior to the excavation, he had little trouble entering and exiting the Varmuzek property. In fact, Montgomery stated the soil on the Varmuzek property never held visible water except during extreme rains. Now, Montgomery testified, the property is always wet, making it more difficult to access the fields.
 {¶ 17} Prior to excavating the ditch, Latell recognized the County was entering appellees' private property for purposes of channeling excess water from a public roadway. However, he declined to file an appropriation case because he believed the *Page 7 
preexisting property "was a waterway" and, in any event, appellants alleged they possessed prescriptive rights over the subject properties.
 {¶ 18} After considering the evidence, the trial court granted to appellees a writ of mandamus. The court specifically determined appellants failed to provide sufficient evidence of a prescriptive easement over the subject properties. The court determined appellants failed to put forth clear and convincing evidence that their usage was "continuous" for the requisite period. As such, the trial court concluded appellants' actions constituted a "taking" of private property rights requiring compensation and damages pursuant to R.C. Chapter 163. The trial court ordered appellants to negotiate with appellees pursuant to R.C. 164.04. The trial court further ordered that if the parties were unable to come to agreement as to damages, appellants would file a complaint for appropriation of appellees' property rights. Appellants moved the trial court for a stay of execution of its judgment pending appeal which the trial court granted. The matter is now before this court on appellate review. Appellant asserts three assignments of error for our consideration. As the first two assigned errors are related, we shall address them together:
 {¶ 19} "[1.] The trial court erred to the prejudice of defendant/appellants [sic] in finding that the elements of a prescriptive easement were not established in this case.
 {¶ 20} "[2.] The trial court erred to the prejudice of defendant/appellants [sic] in finding that [t]here was insufficient, if any, evidence that the pre-existing swale *Page 8 
performed the function of carrying excess water into the drain remotely let alone continuously when there was heavy rain."[3]
 {¶ 21} To establish a prescriptive easement by adverse use, a party bears the burden of proving the use of another's property (1) openly, (2) notoriously, (3) adversely to the owner's property rights, (4) continuously, and (5) for at least 21 years. The Pennsylvania Rd. Co. v.Donovan (1924), 111 Ohio St. 341, at paragraph one of the syllabus. Each element must be proved by clear and convincing evidence. Wood v. Villageof Kipton (2005), 160 Ohio App.3d 591, 595-596. Failure to prove any element results in a failure to establish a prescriptive easement.The Pennsylvania Rd. Co., at 349-350.
 {¶ 22} In its judgment entry, the trial court determined that the county's use of appellees' property was open, notorious, adverse, and extended for at least 21 years. However, the court concluded no evidence was submitted to demonstrate the use was continuous such that a prescriptive easement could be established. Specifically, the court observed:
 {¶ 23} "The Court does find that there was uncontradicted testimony by Defendants and on their behalf that the swale was present on or about the subject properties for a period considerably more than twenty one (21) years. Furthermore, there was also competent and credible testimony by Defendants' witnesses that this swale would serve the function of carrying excess water into the drain. However, there *Page 9 
was insufficient, if any, evidence that the pre-existing swale performed that function even on remote occasions, let alone continuously when there was heavy rain. The Court finds from the evidence * * * that Defendants have failed to establish the elements of a claim for prescriptive easement in this case."
 {¶ 24} Appellants argue the trial court erred when it concluded that the County's use of appellees' property was not continuous. In support, appellant asserts it used the servient property without substantial interruption, for draining the roadway and its adjoining properties throughout and beyond the statutory period. Specifically, appellants contend topographical maps demonstrate land contours which would permit water flow from the south to the northwest, the specific direction the trench was dug. Appellants further point out that the County installed a 15 inch pipe under Hallock-Young Road designed to drain water from the south side of the road to the North. Appellants assert the 15 inch pipe pushed water onto appellees' respective properties from the time of its installation, some time subsequent to 1936, thereby providing clear and convincing evidence of the continuous nature of the County's use. In short, appellants maintain that evidence of the continual function of the pipe is adequate to prove the continuity prong of the prescriptive easement.
 {¶ 25} Appellants' argument, although establishing that the County directed water from the south side of Hallock-Young Road to the north, fails to show that this water followed a specific, regular, and/or continuous path to the area in which the drain was installed. Appellants' only evidence of such a path was premised upon abstracted inferences relating to the topography of the subject properties. However, the *Page 10 
topographical analysis merely proves that the contours in the groundwould permit water to flow in this direction; it does not demonstrate that water actually and continuously flowed in this direction. In fact, witness testimony suggested quite a different conclusion.
 {¶ 26} Appellee Charlene Simmons' property abuts both Hallock-Young Road and St. Rt. 534. Accordingly, any water drainage from the 15 inch culvert, inter alia, would first drain onto her property. With respect to the drainage, Simmons testified that before the ditch was excavated, there was no discernable water "flow" over her property. She testified that during heavy rains, her property would retain surface water periodically but the water would quickly dissipate on its own.
 {¶ 27} Appellee Donna Creetch, Simmons' neighbor to the north, testified that she did not witness any visible water flow across her property prior to the installation of the ditch. She stated that heavy downpours would create standing water on her property; however, in her estimation, the water would dissipate in about an hour.
 {¶ 28} Witness Edward Halesko, an 80 year old gentleman who has lived near the subject properties his entire life, testified he had never observed any channel or water course on appellees' properties prior to the County's excavation of the ditch. Moreover, witness Richard Montgomery, a farmer who has farmed appellee Varmuzek's property (the property north of the Creech's) since 1990, testified, prior to the installation of the ditch, no visible water would move over or accumulate on Varmuzek's land. Now, after the installation, the property is always wet making it more difficult to access fields. Montgomery further testified he observed water on the Simmons and Creech property *Page 11 occasionally, only after "a very heavy rain[.]" When the rain would stop, the water would dissipate within "10 or 15 minutes[.]"
 {¶ 29} Finally, during its examination of Deputy County Engineer Randy Smith, the court queried:
 {¶ 30} "THE COURT: Okay. So, what I am getting at is, I haven't heard any testimony yet, but what evidence do you have that prior to this contention of the clogging that the areas that are lower in elevation were either consistently by nature used to divert that or periodically used to divert the excess water, or on rare occasions, used to divert that excess water, what evidence do you have to that?
 {¶ 31} "A. I would say that, in my opinion, what I was referring to the water travelling over land and that is apparent from the two foot contour maps that illustrate the area, the outlet of the 15 inch is a low lying area that is going to accept a concentrated flow of water.
 {¶ 32} "THE COURT: I understand that. I am trying to get from the point of something capable of accepting to something that has that practical function, what evidence do you have that its [sic] had that practical function through the years.
 {¶ 33} "A. Other than what has been submitted, I don't have anything else available."
 {¶ 34} This exchange shows that appellants did not offer any evidence, other than the topographical contours of the land, to support their claim that water has actually drained over the subject terrain continuously for a 21 year period. Although the land progressively slopes from south to north, it is unclear how this fact would *Page 12 
necessarily establish appellants' claim that drainage has continuously occurred over the area on which the ditch was dug. The failure to produce some evidence illustrating an actual flow pattern as well as the testimony indicating no discernable flow pattern existed is fatal to appellants' assertion of a prescriptive easement. We therefore hold appellants failed to submit clear and convincing evidence that water continuously drained in the specific direction (or manner) of the ditch and the trial court did not err in so holding.
 {¶ 35} Even had appellants put forth clear and convincing evidence that the subject properties continuously drained excess water from the 15 inch pipe to the drainage destination posited, the current use, i.e., a man-made ditch, would still vitiate the continuity element. It is fundamental to an easement by prescription that the use to which the servient estate is put be substantially the same for the entire prescriptive period. See Railway Co. v. Roseville (1907),76 Ohio St. 108, 118; see, also Ohio Jurisprudence 3d, Adverse Possession, section 37.
 {¶ 36} Here, the evidence indicated that, prior to the installation of the ditch, appellees were able to mow (or otherwise traverse) their respective properties with no difficulty. However, after the ditch was installed, testimony indicated the properties handle significantly more water, the concentrated flow and velocity of which has created ruts in the properties as well as additional erosion problems. Moreover, the ditch does not allow the water to dissipate and is therefore consistently holding water. Finally, the soil at or near the ditch is regularly saturated making it difficult or impossible to use. This evidence demonstrates that the use of the property substantially changed after the *Page 13 
ditch was dug. Owing to the substantial change in use, any continuity was destroyed upon the digging of the ditch. See, Railway Co, supra.
 {¶ 37} Appellants' first and second assignments of error are overruled.
 {¶ 38} Appellants' third assignment of error asserts:
 {¶ 39} "The trial court erred to the prejudice of defendant/appellants [sic] in finding that the actions by defendants constituted a taking of private property rights requiring a determination of compensation and damages."
 {¶ 40} Under their final assignment of error, appellants contend the trial court erred in its determination that the County's actions culminated in an unconstitutional taking. However, the body of appellants' argument builds upon a presumption that the County possessed a prescriptive easement and thus, as an adverse possessor, no taking occurred. See State ex rel. A.A.A. Investments v. Columbus (1985), 17 Ohio St.3d 151, 152. Appellants' abstract statement of the law is correct; to wit, had they established prescriptive rights over the real property in question, they would not be obligated to compensate appellees based upon the law of takings. However, as we have previously held, appellants failed to establish, by clear and convincing evidence, a continuous use which was not substantially changed by the excavation of the ditch. Accordingly, appellant's argument lacks merit.
 {¶ 41} Art. I Section 19 of the Ohio Constitution provides:
 {¶ 42} "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open *Page 14 
to the public, without charge, a compensation shall be made to the owner, in money and all other cases, where private property shall be taken for public use, a compensation therefore shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."
 {¶ 43} In Simmons I, the landowners (appellees) in the instant matter appealed the trial court's judgment denying their request for a temporary restraining order. This court dismissed the appeal for lack of a final appealable order. However, in doing so, this court observed that the Trumbull County Engineer entered the subject properties pursuant to R.C. 5543.12. Id. at ¶ 5. R.C. 5543.12 states, in relevant part: "the county engineer * * * may enter immediately * * * upon any land adjacent to any of the highways in the county for purposes of opening an existing ditch or drain, or for digging a new ditch or drain for the free passage of water for the drainage of highways."
 {¶ 44} Furthermore, R.C. 5543.13 provides:
 {¶ 45} "When lands are entered upon under [R.C] 5543.12 * * *, the county engineer shall agree with the owners of such lands, subject to the approval of the board of county commissioners or board of township trustees, as to the amount of compensation and damages already sustained or to be sustained by such owner, and the amount of such compensation and damages, so determined, shall be paid by the county or townships. *Page 15 
 {¶ 46} "If the engineer is unable to agree with such owner upon the amount of compensation and damages already sustained or to be sustained, such amount shall be determined in accordance with sections [R.C.] 163.01 to 163.22 * * *."
 {¶ 47} "The failure to agree between the acquiring agency and the property owner regarding the taking is a statutory condition precedent to filing an appropriation action. See R.C. 163.04 and 163.05."Madison Co. Bd. Of Commrs. v. Bell, 12th Dist. No. CA2005-09-036,2007-Ohio-1373, at ¶ 37. Once an agency has met the requirements of R.C.163.04, it may proceed with an appropriation under R.C. 163.05.
 {¶ 48} Because appellants did not possess a prescriptive easement over the subject properties and, pursuant to Simmons I, the County Engineer entered the properties pursuant to R.C. 5543.12, appellees are statutorily entitled to compensation pursuant to R.C. 5543.13. The trial court did not err in its determination that the County's action effectuated an unconstitutional taking for which appellees are entitled to compensation in accord with R.C. 163.02 to R.C. 163.22.
 {¶ 49} Appellant's third assignment of error lacks merit.
 {¶ 50} For the reasons discussed herein, appellants' three assignments of error are overruled and the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] As will be discussed infra, R.C. 5543.12 grants the county engineer the right to enter any lands adjacent to any county highway for purpose of opening an existing drain or ditch or for digging a new ditch or drain. R.C. 5543.13 requires the engineer to negotiate with the landowners for compensation upon such entry. If the parties are unable to agree, the amount will be determined via an appropriation action under R.C. Chapter 163.
[2] In addition to the testimony of appellees Charlene Simmons, William Creech, and Donna Creech regarding the lack of a discernable channel or waterway on their property, witness Frank Holesko, appellees' 80 year old neighbor who lived near the subject properties all of his life, testified he never observed any formal or visible channel on the properties. Further, witnesses Richard Houck, former Zoning inspector for Newton Township, and Richard Montgomery, a farmer who worked appellee Varmuzek's land, testified they never noticed a channel or swale on the properties. Finally, appellant John Latell testified that, prior to the County digging the ditch, water traversed the subject properties "somewhat like a sheet."
[3] Appellants first assignment of error does not allege the trial court erred by any specific action. Rather, it merely underscores that the county's use of appellees' property for drainage was open, notorious, adverse, and existed for the proper 21 year period. All of these assertions are consonant with the trial court's judgment. *Page 1