[Cite as *Harris v. Dayton Power & Light Co.*, 2016-Ohio-517.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JOY HARRIS, et al. | : | |
| | : | Appellate Case No. 26796 |
| Plaintiffs-Appellees | : | |
| | : | Trial Court Case No. 11-CV-4382 |
| v. | : | |
| | : | (Civil Appeal from |
| DAYTON POWER & LIGHT | : | Common Pleas Court) |
| COMPANY, et al. | : | |
| | : | |
| Defendants-Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of February, 2016.

. . . . . . . . . .

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, Christopher B. Epley Co., L.P.A.,
100 East Third Street, Suite 400, Dayton, Ohio 45402
    Attorney for Plaintiffs-Appellees, Neal and Joy Harris

JAMES PAPAKIRK, Atty. Reg. No. 0063862, and GREGORY E. HULL, Atty. Reg.
No. 0023520, Flagel & Papakirk, LLC, 50 East Business Way, Suite 410, Cincinnati, Ohio
45241
    Attorneys for Defendants-Appellants

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant the Dayton Power and Light Company (DP&L) appeals

from a summary judgment rendered in favor of plaintiffs-appellees Neal and Joy Harris. DP&L contends that the trial court erred because the Harrises do not have standing to pursue a quiet title action, and because the Harrises failed to present sufficient evidence to meet all the elements of their claim for a prescriptive easement.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in favor of the Harrises. Accordingly, the judgment of the trial court is Affirmed.

**I. The Harrises Established All Elements of a Claim for a Prescriptive Easement**

{¶ 3} In June 2011, the Harrises filed a complaint against DP&L, entitling Count I as an action seeking to quiet title based on a claim of easement by prescription. The trial court rendered summary judgment in favor of DP& L on the easement-by-prescription claim, and the Harrises appealed. We reversed the judgment and remanded the cause. *Harris v. Dayton Power & Light*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234. The facts as described in the first appeal are as follows:

> On May 25, 1973, Orlyn and Dorothy Harris acquired approximately 130 acres of rural land in Germantown. They used the property as overflow for their farming operation and to graze livestock. A former railroad line cuts across the 130 acres. In April 1975, most of the property was sold to James and Pamela Glossip. The property sold to the Glossips represents all of the acreage to the west of the railroad line.
>
> The remaining 28 acres of the original 130 acres are currently owned by Neal and Joy Harris (the Harrises), who are the son and daughter-in-law of Orlyn and Dorothy Harris. This acreage is situated to the east of the railroad line. The 28 acres are divided into two parcels. The first parcel is a

little over fifteen cleared acres, and the second parcel contains a little over twelve primarily wooded acres. The Harrises' barn is located on the first parcel; their house is located on the second parcel. There is a creek on the second parcel.

The Harrises wished to engage in recreational activities on the wooded acreage of the second parcel. Both parcels abut the railroad line, which is owned by DP&L. According to the Harrises, the only way to access the wooded portion of the property is via the DP&L property. Moreover, during periods of high water, the only way to access their home is via the DP&L property.

In June 2009, DP&L sent a letter to the Harrises informing them that DP&L does not permit the unauthorized use of real property and that there were no written lease agreements granting rights of use to the railroad property. The Harrises unsuccessfully attempted to purchase the railroad property from DP&L.

In November 2009, DP&L sent a letter to the Harrises giving them the right to enter over, upon, and through the railroad property for the express purpose of ingress and egress, provided that no dangerous or hazardous activity took place on the property and that no building or storage would occur on the property.

In June 2010, DP&L sent a letter to the Harrises revoking the permission previously granted. DP&L cited prohibited dangerous activities occurring on the property. The Harrises ceased all activity on the railroad

property. In May 2011, DP&L granted the Harrises limited permission to use the railroad property on two days to access their property to remove equipment.

*Harris v. Dayton Power & Light*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 3-8.

**{¶ 4}** After we reversed, and remanded the case, both parties moved for summary judgment. The Harrises supported their motion with affidavits from both Neal and Joy Harris. In his affidavit, Neal avers that his parents bought the property in 1973, when he was ten years old, and since 1973 his family used the railroad property to access their property. Neal's affidavit establishes that his parents gave one parcel to him in 1994, and that he inherited the other parcel in 2005, when his mother died. Neal's affidavit avers that since 1994, he and his wife used the railroad property regularly for access to their property, and that his family's use has been continual and open since 1973. In her affidavit, Joy explained that since their home on the property was completed in 1997, they have continually used the right of way "to access the woods for various activities including four-wheeling, blackberry-picking, mushroom-hunting, camping, horseback-riding, exercising, hauling firewood, giving hay-rides, and livestock grazing." Dkt. #5.

**{¶ 5}** DP&L also moved for summary judgment, supported by their depositions of both Neal and Joy Harris. In her deposition, Joy admitted that she had no knowledge of the use of the property prior to the time when she began dating Neal around 1990, and that her knowledge of the property use before she moved there was limited to what Neal had told her. In Neal's deposition, he explained that his parents never lived at the property where he currently resides, but that they used all of the property for growing crops and

as pasture for cows and pigs, which necessarily required the animals to cross the railroad line to access both parcels of land.   Neal testified that the cows were free roaming, all year round, and that the pigs were seasonal – they did not stay outside in winter. Both Joy and Neal testified that they continued to grow crops and farm pigs on the property, but did not use the land for pasturing cows after they built and moved into their residential home on the property in 1997.   Joy testified that they stopped raising pigs on the property in 2009, when DP&L prohibited their access across the railroad line, but they continue to use their land for growing crops, and pasturing horses. Joy and Neal testified that they have never used the railroad line property for farming crops — it was only used to provide access between their parcels of land.

{¶ 6} Neal testified that he relies on a wood burning stove to heat his home, but he now has no access to the wooded area of his property, where he had previously obtained the wood needed for heat through the winter. Neal testified that when the railroad owned the railroad bed, it was maintained by the railroad. Neal also testified that after the railroad property was purchased by DP&L it was not maintained, causing problems on his land, due to flooding and weed overgrowth, which reduces the land that can be farmed.

{¶ 7}   The trial court rendered summary judgment in favor of the Harrises, citing as facts established by Neal's affidavit that his family has continually, since 1973, used the railroad property to access their property. The trial court also found that the Harrises proved all the elements of their claim for a prescriptive easement, including continuous use of the property because the use made by the Harris family for more than 21 years was substantially similar. The trial court rejected DP&L's claim that the Harrises lacked standing to bring this action. The trial court concluded that the Harrises' exclusive

possession of the property was not necessary to prove an easement by prescription. From the summary judgment rendered against it, DP&L appeals.

## II. Standard of Review

{¶ 8} We have previously explained our role in reviewing summary judgments:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013–Ohio–5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the

Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90–CA–96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehouse Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

*Stephan v. State*, 2d Dist. Miami No. 2015-CA-15, 2015-Ohio-4516, ¶ 41, citing *Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

### III. The Harrises's Standing Is Not a Disputed Issue

**{¶ 9}** For its First Assignment of Error, DP&L asserts as follows:

THE TRIAL COURT ERRED BY HOLDING THAT APPELLANT THE DAYTON POWER & LIGHT COMPANY WAIVED ITS ARGUMENT THE APPELLEES NEAL AND JOY HARRIS LACKED STANDING BY NOT PURSUING THE ARGUMENT IN THE EARLIER APPEAL TO THIS COURT.

**{¶ 10}** DP&L argues that because standing is required before a court's subject-matter jurisdiction is invoked, it is never waived. DP&L also asserts that it did not waive the issue of standing, because it did raise it in the first motion for summary judgment, and

in a footnote in its brief in the first appeal. In support of its argument, DP&L relies on the holding in *Dominion Homes, Inc.* v. *Shinoskie*, 10th Dist. Franklin No. 01AP-794, 2002-Ohio-2298, and *Clark v. Hubbard*, 8 Ohio 382 (1838). Both of these cases were quiet title actions, seeking to clarify fee simple title to real property. In *Clark*, the Supreme Court of Ohio held that to pursue fee simple title through a quiet title action, the complainant must affirmatively allege and prove actual possession of the land in controversy. *Clark* at pg. 385.

{¶ 11} A property line dispute led to a lawsuit between the builder of a residential development and the adjoining property owner in *Dominion Homes, Inc. v. Shinoskie*, 10th Dist. Franklin No. 01AP-794, 2002-Ohio-2298. In *Dominion Homes*, the court held that the developer did not have standing to pursue the quiet title action because it had already sold the four lots abutting the property line. *Id.* at ¶ 18. The court's decision focused on the language of R.C. 5303.01, governing actions to quiet title, which provides that an action may be brought by a person in possession of real property, or by a person out of possession if the person has a remainder or reversion interest in the real property. Id. at ¶¶ 17-18. *Dominion Homes* is distinguishable from the case before us because the Harrises are seeking a prescriptive easement, which is not the same as a quiet title action seeking fee simple title to property. Consequently, they need only show a possessory interest in the estate in which they seek to quiet title – an easement of access in this case.

{¶ 12} An easement is a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former. *Malone v. Bd. of Zoning Appeals of Xenia Twp.*, 2d Dist. Greene No. 06-CA-62, 2007-Ohio-3812, ¶ 10, citing

*Trattar v. Rausch*, 154 Ohio St. 286, 95 N.E.2d 685 (1950), paragraph one of the syllabus. "An easement in or over the land of another may be acquired only by grant, express or implied, or by prescription". *Trattar* at paragraph two of the syllabus. "Prescription is the acquisition of an easement, over the property of another, through adverse use of that property." *Crawford v. Matthews*, 4th Dist. Scioto No. 97CA2555, 1998 WL 720734, *2 (Sept. 21, 1998). "Prescription is, in essence, a form of adverse possession. They differ in that prescription grants the adverse user an easement or incorporeal rights in the property, while adverse possession grants the adverse user legal title." *Id.* at fn 6.

{¶ 13} The factual issue of whether the claimant has possession, a remainder interest, or reversion interest in the property is not an element of a claim for a prescriptive easement. An easement grants permission to use the land of another, not the exclusive right to possess it. The elements necessary to prove a quiet title action seeking fee simple title to real property are different than the elements necessary to prove a prescriptive easement. To acquire fee simple title to real property by adverse possession, a party must establish, by clear and convincing evidence, that the claimant has possessed the land in an open, notorious, exclusive, adverse, and continuous manner for at least 21 years. *Grace v. Koch*, 81 Ohio St.3d 577, 579, 692 N.E.2d 1009 (1998). "The distinction between the elements required to acquire a prescriptive easement and those required to acquire title by adverse possession is limited to the land's exclusive use. Acquiring an easement by prescription differs from acquiring title by adverse possession, in that exclusivity is not an element required to establish an easement by prescription." *Vaughn v. Johnston*, 12th Dist. Brown No. CA2004-06-009, 2005-Ohio-942, ¶ 11 (internal citations omitted).

{¶ 14} In the present case, the Harrisses established that there is no genuine issue of material fact that they and their predecessors have used the property at issue since 1973. Therefore, the Harrises have standing to pursue a claim for a prescriptive easement based on their use of the property. Whether their use was adverse, or continuous for a sufficient length of time, are factual elements of their claim, but those issues do not implicate their standing to pursue the claim. We are also not persuaded that the Harrises' claim should fail based on how they chose to title Count I of their complaint, identifying their claim as a quiet title action, rather than one seeking a declaratory judgment for a prescriptive easement. Regardless of the title chosen for Count I, the text of Count I alleges facts that, if proven by the requisite degree of proof, would establish their claim for a prescriptive easement.

{¶ 15} Accordingly, the First Assignment of Error is overruled.

**IV. The Trial Court Based its Judgment on Sufficient Evidence**

{¶ 16} For its Second Assignment of Error, DP&L asserts as follows:

THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF APPELLEES JOY AND NEAL HARRIS AND DENYING THE MOTION FOR SUMMARY JUDGMENT OF APPELLANT THE DAYTON POWER & LIGHT COMPANY WHEN APPELLEES LACKED STANDING AND FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT THEIR PRESCRIPTIVE EASEMENT CLAIM.

{¶ 17} DP&L argues that the Harrises' summary judgment motion should fail because they lack standing to pursue the claim, and because the Harrises failed to present sufficient evidence on each element of the claim. As discussed above, we have

already concluded that the Harrises have standing to pursue their prescriptive easement claim.

{¶ 18} A party claiming a prescriptive easement has the burden of proving a use of the property that is: (1) open; (2) notorious; (3) adverse to the neighbor's property rights; (4) continuous; and (5) at least 21 years in duration. *J.F. Gioia, Inc. v. Cardinal Am. Corp.*, 23 Ohio App.3d 33, 37, 491 N.E.2d 325 (8th Dist.1985). The claimant has the burden of proving each element by clear and convincing evidence. *Coleman v. Penndel Co.*, 123 Ohio App.3d 125, 130, 703 N.E.2d 821 (7th Dist.1997).

{¶ 19} Property is used "openly" when it is used "without attempted concealment," and it is used "notoriously" when its use is "known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." *Hindall v. Martinez*, 69 Ohio App.3d 580, 583, 591 N.E.2d 308 (3d Dist.1990). We agree with the trial court that the record contains unrebutted evidence that the Harrises and their predecessors openly and notoriously used the railroad right-of-way to access their two parcels of property, without concealment, and in a manner of which the owner should, in the exercise of reasonable diligence, have had knowledge.

{¶ 20} The element of adversity was established by unrebutted facts that the Harrises' use of the land was without DP&L's permission from 1973 to 2009. "Use of a claimed prescriptive easement is 'adverse' when it is without the permission of, or inconsistent with the rights of the true property owner." *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 91. Pertinent to the case before us, it has been recognized that "[w]here one uses a way over the land of another without permission as

a way incident to his own land, and continues to do so with the knowledge of the owner, such use is, of itself, adverse." *Pavey v. Vance*, 56 Ohio St. 162, 46 N.E. 898 (1897), paragraph one of the syllabus.

**{¶ 21}** When calculating the years of continuous adverse use, it has been held that the continuity is not broken by a change of ownership between family members. "[I]n order to show that the adversity element existed for twenty-one years, the occupier may 'tack' his adverse use with the adverse use of his predecessors in privity." *Eckman v. Ramunno*, 7th Dist. Mahoning No. 09 MA 162, 2010-Ohio-4316, ¶ 41, citing *Zipf v. Dalgarn*, 114 Ohio St. 291, 296, 151 N.E. 174 (1926).

**{¶ 22}** DP&L argues that the Harrises failed to establish that their use of the property was continuous for at least 21 years because their mode of use changed. DP&L asserts that Orlyn and Dorothy Harris used the property from 1973 to 1994 for farming purposes, but after the land was conveyed to their son and daughter-in-law, the Harrises used the land for entirely different purposes – primarily recreational. We disagree with this construction of the unrebutted facts. The property affected by the easement is an unused railroad right-of-way, described as an abandoned elevated railroad bed, which runs through the property, and which must be crossed in order for the Harrises to access their two parcels of property. The Harrises and their predecessors did not use the railroad land for farming or for recreational activities – they used it for ingress and egress from one parcel to the other. Whether the Harrises are crossing the line with cows, horses, pigs, or ATV's is immaterial; the purpose for which the easement was used has consistently been for ingress and egress between the two parcels. Therefore, we agree with the trial court that the unrebutted facts establish that there has been no substantial

change in the mode or character of use that could adversely affect the element of continuous use. *See, e.g., Keish v. Russell,* 4th Dist. Athens No. 94CA1618, 1995 WL 75388 (Feb. 17, 1995) (a change in use from daily use of a driveway for access to property to a sporadic use is a change in frequency, not a change in character).

**{¶ 23}** DP&L also argues that the Harrises cannot prove continuous adverse use of the land because DP&L granted the Harisses permission to use the land in 2009, and then revoked their permission to use the land in 2010. However, the unrebutted facts establish that the Harrises' claim for a prescriptive easement had already matured before this attempt to disrupt their continued use. As we held in our opinion in the Harrises' first appeal:

> However, once the claimant's use of the property has been open, notorious, and adverse to the servient property owner for a continuous period of 21 years, it is irrelevant whether the servient property owner subsequently grants the claimant permission to use the property. *Wood v. Village of Kipton*, 160 Ohio App.3d 591, 2005-Ohio-1816, 828 N.E.2d 173, ¶ 22-24 (9th Dist.). The only way to extinguish a matured prescriptive easement is for the titleholder to obstruct the easement in an open, adverse, and continuous manner for 21 years. *Wood* at ¶ 26, citing *J.F. Gioia* [23 Ohio App. 3d 33, 491 N.E.2d 325 (8th Dist.1985)]. Furthermore, "'[a] user's acknowledgment that the title holder has the paramount right will not extinguish a fully matured prescriptive easement.'" *Wood* at ¶ 25 (9th Dist.), quoting *J.F. Gioia* at paragraph six of the syllabus.

*Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶

13.

**{¶ 24}** We conclude that the record does provide sufficient evidence to establish each element of the claim for a prescriptive easement, and that the trial court did not err by rendering summary judgment in favor of the Harrises. Accordingly, the Second Assignment of Error is overruled.

## V. Conclusion

**{¶ 25}** Both assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

DONOVAN, P.J., and FROELICH, J., concur.

Copies mailed to:

Christopher B. Epley
James Papakirk
Gregory E. Hull
Hon. Richard Skelton