[Cite as *Leffel v. Casstown*, 2020-Ohio-4593.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| THOMAS E. LEFFEL | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2020-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-52 |
| | : | |
| VILLAGE OF CASSTOWN | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2020.

. . . . . . . . . . .

DAVID E. BEITZEL, Atty. Reg. No. 0018224, 22 North Short Street, Troy, Ohio 45373
       Attorney for Plaintiff-Appellant

EDWARD C. DOWD, Atty. Reg. No. 0018681 and MICHAEL D. RICE, Atty. Reg. No.
0090085, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
       Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Thomas E. Leffel, appeals from a summary judgment rendered in favor of Defendant-Appellee, Village of Casstown ("Casstown"). In support of his appeal, Leffel presents nine assignments of error directed to the trial court's decision that Casstown was entitled to ownership of disputed land on the basis of adverse possession. After considering the assignments of error, we find them without merit. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} Leffel is the owner of a house (a duplex) located at 103 Main Street in Casstown, Ohio. Main Street is also State Route 55, which travels through town in a north/south direction. Leffel purchased the house for $22,230.65 at a sheriff's sale and received a sheriff's deed issued on October 5, 1983. Thomas Leffel Deposition, p. 7 and 15, and Plaintiff's Ex. A to the deposition. Leffel did not live in the duplex, but rented it out. Leffel Deposition at p. 7.

{¶ 3} In February 2009, Casstown applied to the Ohio Public Works Commission for funding for a project to improve Route 55 ("Project"). Defendant's Motion for Summary Judgment, Ex. G, Affidavit of Holly Parton, ¶ 4-5. In August 2010, Casstown contracted with Fanning Howey Associates to be the design engineer and construction manager for the Project. *Id.* at ¶ 6. In February 2011, Casstown awarded a $1,209,076.62 contract to VTF Excavating as the general contractor. *Id.* at ¶ 7.

{¶ 4} Leffel was a long-time resident of Casstown. He was born in 1947 and had lived at a house on Lafayette Street in Casstown since birth, other than when he was in college and on a few occasions when he worked out of town. Leffel Deposition at p. 6.

However, during 2011, Leffel was in Florida much of the year attending to a trailer he owned. As a result, he did not observe the construction on the Project. *Id.* at p. 18-19. Leffel did know that Casstown was going to repair the road before construction began. *Id.* at p. 22.

{¶ 5} When Leffel returned from Florida in late fall 2011 and saw his property, he believed his property lines had been altered and things had been done that were "encroachments." *Id.* at p. 37. In this regard, Leffel stated that "the entire front of my property used to be flat from the sidewalk to the base of the porch. A tilt had been imposed on that whole area." *Id.* at p. 38. In addition, his black dirt had been replaced with clay; two shade trees and two stumps had been removed; a second sidewalk that connected the sidewalk to the curb had been removed; and two additional steps had been added, one on the approach to the porch and another on the approach to the side entrance. *Id.* at p. 38-40.

{¶ 6} Because he suspected a "taking" had occurred, Leffel consulted a surveyor, Michael Cozatt, and asked him to conduct a survey of the property. *Id.* at p. 43. Leffel also wrote a letter to the Casstown Village Council, seeking permission to remove and replace the topsoil between the sidewalk and street at his expense. *Id.* at p. 50. Council meeting minutes dated December 13, 2011, state that "Mr. Tom Leffel is upset with the topsoil placed on the tree line between the sidewalk and Main Street in front of his property. He sent [a] letter to council and mayor asking permission to remove and replace topsoil at his expense between the sidewalk and the street. Council does not object to the request." *Id.* and Defendant's Ex. D attached to the Leffel Deposition.

{¶ 7} According to Cozatt, Leffel contacted him about the Project in 2011 and

asked that he check the surveys and the boundaries of Leffel's house lot. Michael Cozatt Deposition, p. 18. Leffel indicated that his request was prompted by the Project and that he was not happy with it location-wise or elevation-wise. *Id.* at p. 19. Leffel also mentioned the removal of trees and the creation of steps. *Id.* at p. 20. Based on his contact with Leffel, Cozatt surveyed up and down the block and located as many survey points as he could. *Id.* He did not file a survey at that time, however. *Id.* at p. 23. Although Cozatt had contact with Leffel off and on thereafter, Cozatt did not issue a report until January 29, 2015. *Id.* at p. 22. The reason he did not issue a report was that he was not asked to do so until after Leffel contacted an attorney. *Id.* at p. 21.

{¶ 8} In February 2015, Leffel filed a complaint against Casstown, and Casstown filed a counterclaim. However, in October 2016, the parties agreed to voluntarily dismiss their claims. *See Leffel v. Village of Casstown*, Miami C.P. No. 15 CV 00083 (March 19, 2015). Leffel then filed the current action against Casstown on January 27, 2017. In the 2017 complaint, Leffel raised the following matters: (1) title should be quieted to his property on 103 Main Street; (2) unlawful encroachments should be removed; (3) an unlawful taking occurred under Ohio law; (4) Casstown violated 42 U.S.C. 1983 based on an unlawful taking of Leffel's property; and (5) property damage occurred during the 2011 construction of the Project.

{¶ 9} Casstown filed an answer and counterclaim, asking the court to quiet title to Casstown's possessory interest in Leffel's property and for a declaratory judgment with respect to its property interest. In addition, Casstown claimed title over any alleged encroachment due to adverse possession or easement by prescription.

{¶ 10} In March 2017, Casstown filed a notice of removal of the action to federal

court. However, in late October 2018, the district court dismissed the Section 1983 claim based on Leffel's failure to bring suit within the applicable statute of limitations. The court also refused jurisdiction over the state law claims and remanded the case to state court. *See Leffel v. Village of Casstown*, S.D.Ohio No. 3:17-cv-79, 2018 WL 5619589, *3 (Oct. 30, 2018).

{¶ 11} Following remand, Casstown filed a motion for summary judgment on January 10, 2020, and Leffel responded. On February 28, 2020, the trial court rendered summary judgment in Casstown's favor, finding that Casstown had established its ownership of the right of way by adverse possession, and that any claim for a non-continuing trespass was barred by the statute of limitations. This appeal followed.

## II. Adverse Possession

{¶ 12} In addressing the assignments of error, Leffel has combined his discussion of the first three assignments of error. However, Casstown contends that the First, Second, Third, Seventh, and Ninth Assignments of Error incorrectly attempt to shift our focus solely to the original Plat of Cass, which was filed in 1833. We agree that these five assignments or error are connected, and we will address them together. They state, in order, as follows:

> The Trial Court Erred in Concluding, Before and After Defendant's Reconstruction of Route 55, There Is No Uncertainty Regarding the Location of the West Boundary Line of Inlot 7 as Same Adjoins the East Lot of Dedicated Main Street, as Referenced in the Recorded Municipal Plat of Casstown.

The Trial Court Erred in Finding that Plaintiff's Deed Conveyed Nothing More Than a Parcel Solely Delineated by a "Metes and Bounds" Description.

The Trial Court Erred by Determining No Genuine Issues Exist and That Defendant Has Established All Necessary Elements of Adverse Possession.

The Trial Court Erred in Failing to Quiet the Title [of] Leffel to the Real Estate He Owns on Main Street in Casstown, Ohio.

The Trial Court Erred in Granting Summary Judgment on All the [sic] Leffel's Claims Because There Were Multiple Genuine Issues of Fact Precluding the Proper Issuance of Summary Judgment

{¶ 13} Notably, the Ninth Assignment of Error merely recites generally that summary judgment was inappropriate. Therefore, it will succeed or fail depending on how the other assignments of error are resolved.

{¶ 14} As indicated, the trial court rendered summary judgment in Casstown's favor. The court concluded that:

Defendant established its ownership of the right-of-way in use since 1968 by adverse possession, and further established that the Route 55 Project maintained the boundary described in Plaintiff's deed by placing the sidewalk on that same line. There is no genuine issue of material fact regarding the boundary line between Defendant's right-of-way and Plaintiff's parcel affecting Plaintiff's title, and no permanent encroachment or taking occurred as a result of the Route 55 Project.

Decision Granting Defendant's Motion for Summary Judgment ("Decision"), p. 12.

{¶ 15} Under the above assignments of error, Leffel contends that the trial court erred in relying on surveys that Richard Klockner performed, which resulted in a "de facto" alteration of the center line of Main Street. According to Leffel, substantial uncertainty therefore exists as to the center-line of the street and its eastern boundary. Leffel further contends that because of the uncertainty of the boundaries, genuine issues of material fact exist with respect to whether he, in the exercise of a layman's diligence, would have been able to determine the evidence of adverse control over his property before 2011. Before addressing these points, we will outline the applicable standard of review.


A. Standard of Review

{¶ 16} The law is settled that "[a] trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978).

{¶ 17} "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). As a result, appellate courts do not defer to trial courts during summary judgment review. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.), citing *Brown v. Scioto*

*Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 18} Ohio follows the prevailing view that "public or governmental entities may acquire title to land by adverse possession." (Citations omitted.) *State, ex rel. A.A.A. Invests. v. City of Columbus*, 17 Ohio St.3d 151, 152, 478 N.E.2d 773 (1985). In order "to acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 589-581, 692 N.E.2d 1009 (1998). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 19} "To be open, the use of the disputed property must be without attempted concealment." *Hindall v. Martinez*, 69 Ohio App.3d 580, 583, 591 N.E.2d 308 (3d Dist.1990), citing *Foot v. Bauman*, 333 Mass. 214, 218, 129 N.E.2d 916 (1955). "To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." *Id.*

{¶ 20} Notably, "[a]ctual knowledge is not a necessary element of adverse possession." *A.A.A. Invests.* at 153. Instead, where the involved streets are "in open, visible, and notorious possession by the city, constructive knowledge is charged to the titleholder." *Id.*

{¶ 21} With these standards in mind, we will consider the evidence. Before we do so, we note that Casstown has urged us to use a manifest weight of the evidence standard of review. Appellee's Brief, p. 14, citing *Schaffer v. Wietzel*, 2019-Ohio-572, 132 N.E.3d 220, ¶ 14 (2d Dist.). We stated in *Schaffer* that " ' "[t]ypically, appeals on adverse possession claims challenge the manifest weight of the evidence supporting the various elements of adverse possession." ' " *Id.* at ¶ 14, quoting *Violante v. Village of Brady Lake*, 11th Dist. Portage No. 2012-P-0054, 2012-Ohio-6220, ¶ 68, which in turn quoted *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21.

{¶ 22} However, *Schaffer*, *Violante,* and *Pottmeyer* were all cases in which trials had occurred and in which manifest weight challenges were asserted on appeal. *See Schaffer* at ¶ 6 and 21; *Violante* at ¶ 8 and 68; and *Pottmeyer* at ¶ 14 and 21. In contrast, the case before us was resolved on summary judgment. Consequently, de novo review is the standard we will apply.

## B. Evidence Pertaining to Adverse Possession

{¶ 23} According to the evidence, the first Plat of Cass (later known as Casstown) was recorded in Deed Book 10, page 366 of the Miami County Recorder on June 25, 1833. Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, Affidavit of Michael Cozatt, p. 2, and Ex. A attached to the Affidavit, ¶ 2-3. At that point, Main Street was described as being 60 feet wide with lots on each side having a depth of 140 feet. *Id.* However, because one of the original owners of the involved property did not contribute the required amount of land, the depth of the properties on the east side of the Main Street was shortened and the centerline of Main Street was five feet further east

than platted. Defendant's Motion for Summary Judgment, Phillip Brumbaugh Affidavit, ¶ 5 and Ex. A-1 attached to the Affidavit, ¶ 3-4. Surveys were not recorded or filed until around 1900, and the earliest one found in 1924 did not give a width for Main Street. Cozatt Deposition at p. 45.

{¶ 24} After 1833, the outer boundary of the plat did not change very much for 183 years, but the center line of Main Street changed three times. Defendant's Motion for Summary Judgment, Brumbaugh Affidavit, at ¶ 5, and Ex A-1 at ¶ 3. While the original centerline on the plat of Cass was five feet west of the Section line, a later survey done after curbs and sidewalks were installed showed that the street was 66 feet wide from one side of Main Street to the other, and the centerline was five feet east of the original centerline. *Id.* at ¶ 6. *See also* Cozatt Deposition at p. 57. This width was indicated on Richard Klockner's 1968 survey, which was based on a field measurement of the street. *Id.*, citing Ex. I to the Cozatt Deposition; *see also* Brumbaugh Affidavit at ¶ 4.[1] This again resulted in shortening of the depth of the lots on the east side of the street. *Id.* The record is not clear concerning when sidewalks were installed, but they were present on the 1968 survey, which included Inlot 7 (Leffel's lot). *See* Ex. I attached to the Cozatt Deposition.

{¶ 25} Due to these issues, Klockner performed another survey in 1972, which again determined a 66-foot width for Main Street and a new centerline location that subtracted three feet from the depth of the lots on the east and west sides of the street. Brumbaugh Affidavit at ¶ 5; Cozatt Deposition Ex. J. The 1972 survey is referenced in

---

[1] A 1961 survey by Klockner had also documented an "actual" width of Main Street as 68.6 feet. Cozatt Deposition at p. 27 and Ex. H to the Deposition.

the property description in all the deeds thereafter in Leffel's chain of title, including Leffel's own title. *See* Defendant's Motion for Summary Judgment at Ex. B, C, D, and E, and Complaint, Ex. A.[2]

{¶ 26} For example, the deed filed in December 1972 stated in pertinent part that it was conveying:

[T]he following real property * * *

Being a part of Inlot Seven (7) in said village, more particularly described as follows:

Beginning at a cross-cut in concrete sidewalk, which marks the northwest corner of Inlot 7 * * * thence to the place of beginning.

* * *

Description prepared by Richard W. Klockner, Professional Surveyor, in accordance with a survey filed in the Miami County Engineer's Record of Lot Surveys, Volume 12, page 94.

Ex. E, at p. 2 (Vol. 494, Page 210, Miami County, Ohio Records of Deeds).

{¶ 27} Michael Cozatt was Leffel's expert. Cozatt himself used the 1972 Klockner survey when doing his own 2005 survey, and he found a 66-foot width for Main Street. Cozatt Deposition at p. 65 and Ex. N to the Deposition. Likewise, the firm that designed the 2011 Route 55 Project used the 1972 Klockner survey as well as Cozatt's 2005 survey. Craig Mescher Affidavit, ¶ 15-16.

{¶ 28} Consistent with the other deeds in the chain of title, Leffel's 1983 Sheriff's Deed transferred the following "described real estate":

---

[2] Neither side gave the trial court any deeds prior to 1972.

Being a part of Inlot No. 7 in the Village of Casstown, Ohio, and described as follows: Beginning at a cross cut in concrete sidewalk which marks the Northwest corner of Inlot 7, same being the Southwest corner of Inlot 8 on the East line of Main Street; thence North 89° 48' East, with the North line of Inlot 7, 128.8 feet to an iron pin at the Northeast corner of Inlot 7; and the West line of thence South 0° 25' East with the East line of Inlot 7, and the West line of a 12 foot alley 71.0 feet to an iron pin; thence South 89° 48' West, parallel to and 11.5 feet North of the South line of Inlot 7, 111.32 feet to an iron pin; thence North 9.0 feet to an iron pin; thence South 89° 48' West, parallel to and 20.5 feet North of the South line of Inlot 7, 18.0 feet to a crosscut in concrete sidewalk, on the West line of Inlot 7 and the East line of Main Street; thence due North with the West line of Inlot 7, 62.0 feet to the place of beginning, EXCEPTING therefrom the following: Being a part of Inlot 7, Village of Casstown, Ohio, and described as follows: Starting at the South East corner of Inlot 7; thence North 0° 25' West, 11.50 feet to an iron pin at the place of beginning of the tract herein described; thence South 89° 48' West, 111.32 feet to an iron pin; thence due North 4.50 feet to an iron bar; then North 89° 48' East 111.29 feet to an iron pin; thence South 0° 25' East, 4.50 feet to the place of beginning of the above described tract. Survey filed in the Miami County Engineer's Record of Lot Surveys, Vol. 12, Page 94, and subject to all highways, easements, and restrictions of record and also a cross easement agreement between Lois Smalley and Bernice Smalley and Andrew Willhouse and Doris Willhouse,

dated December 12, 1972, and recorded in Vol 494, Page 213 of the Deeds Records of Miami County, Ohio. Also known as 103 North Main Street, Casstown, Ohio.

Ex. A at p. 2 (Book 568, Page 869, Miami County, Ohio Records of Deeds).

{¶ 29} The front (or western) two boundary corners on the part of Leffel's property that faces Main Street were designated by cross-cuts or marks in the sidewalk. Leffel Deposition at p. 30. These cross-cuts are also referenced in Leffel's 1983 deed, the 1972 deed, and the other deeds in the chain of title. *Id.* at Ex. A, p. 2; Ex. B, p.1; Ex. C, p. 1; Ex. D, p. 1; and Ex. E, p. 2. For more than 40 years prior to January 7, 2020, i.e., since at least 1980, Casstown had used the appropriate 66-foot Main Street right-of-way for vehicular traffic, parking, curbs, gutters, and sidewalks. Defendant's Motion for Summary Judgment, Affidavit of Holly Patton, ¶ 12.

{¶ 30} Under the 1983 sheriff's deed, the depth of Leffel's lot (Inlot 7) was 128.8 on the north line and 129.29 on the south line. Leffel Deposition at p. 21 and 73; Cozatt Deposition at p. 61-62.[3] After the 2011 Project was completed, Leffel's lot had a depth of 128.99 on the north side and 129.37 feet on the south line. Leffel Deposition at p. 47; Brumbaugh Ex. A-1, ¶ 6; and Cozatt Deposition at p. 27. These were the dimensions measuring from the new sidewalk to the boundary of the property at the alley. Leffel Deposition at p. 83. Thus, based on the deed and the measurements after construction was complete in 2011, Leffel had as much property or more after construction as he had

---

[3] There was also a 12-foot alley located on the eastern boundary of Leffel's property, which a developer had dedicated to the Village. This alley is drawn in on a deed from the early 1840's. Cozatt Deposition at p. 53-54, 58, and 73; Defendant's Ex. A attached to the Cozatt Deposition, p. 7 (Deed Book 21); and Leffel Deposition at p. 32.

under the 1983 deed.   Cozatt Deposition at p. 72; Alan Kappers Affidavit, ¶ 4-5 and 10, and Exs, I-1, I-2, and I-3 to the Kappers Affidavit.

{¶ 31} In addition, Mescher stated that "[t]he Route 55 Improvement[s] were made within the existing right-of-way as depicted on Michael Cozatt's 2005 survey and on Richard Klockner's 1972 survey and did not alter the right-of-way as depicted in these two surveys."   Mescher Affidavit at ¶ 21.   The new sidewalk was also completely within the right-of-way, whereas the prior sidewalk had extended several inches to the east onto Leffel's property.   *Id.* at ¶ 18-19 and Ex. H-2 attached to the Mescher Affidavit.

{¶ 32} In view of the above facts, we agree with the trial court that there was no genuine issue of material fact, and that Casstown established by clear and convincing evidence that it obtained the land in the 66-foot right-of-way by adverse possession.   As noted, Leffel purchased Inlot 7 on October 5, 1983.   There is no dispute that the sidewalks existed as early as 1968.   Not only had Casstown been using the 66-foot right-of-way openly, notoriously, exclusively, and adversely to all properties in a continuous manner since at least 1968, Casstown continued to do so after Leffel purchased his property.   If Leffel wished to prevent Casstown from obtaining the land by adverse possession, he would have needed to file suit within 21 years after he purchased the property, or by October 5. 2004.   However, he failed to do so.

{¶ 33} Furthermore, Leffel's insistence on relying on the 1833 depiction of the plat of Cass is beside the point.   While the deeds referenced conveyance of "a part of Inlot 7 in the Village of Casstown," the description of the land being conveyed was through metes and bounds.   "When lands are granted by metes and bounds, all the area within those bounds, and no more, passes."   *Lockwood v. Wildman*, 13 Ohio 430, 1844 WL 50 (Dec.

1844), paragraph four of the syllabus. *Accord Violante*, 11th Dist. Portage No. 2012-P-0054, 2012-Ohio-6220, at ¶ 43-44; *Hall v. Cignoni*, 4th Dist. Lawrence No. 92 CA 19, 1993 WL 220591, *4 (June 18, 1993). Thus, regardless of what the original plat said, Leffel received only the interest conveyed by his deed. As indicated above, the depth of Leffel's lot retained virtually the same dimensions after the 2011 roadwork as it did before.

{¶ 34} We are aware of the concept that "[a] conveyance by lot number assigned by a plat incorporates the plat as part of the description." *Sellman v. Schaaf*, 26 Ohio App.2d 35, 41, 269 N.E.2d 60 (3d Dist.1971). However, as the trial court observed, Leffel's deed conveyed "a part" of Inlot 7, not the entire lot. Decision at p. 10. Consequently, the description of metes and bounds controls.

{¶ 35} Furthermore, because the description of the lot in Leffel's chain of title demonstrated the width of Casstown's right-of-way and referred as well to the original plat, Leffel is charged with having had constructive knowledge of these matters. "Constructive knowledge" in general is defined as " '[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.' " *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 23, quoting Black's Law Dictionary 1004 (10th Ed.2014). "A purchaser of real property is obligated to exercise due diligence and thoroughly examine the chain of title to discover the existence of adverse claims or encumbrances." *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 315, 594 N.E.2d 1 (2d Dist.1990).

{¶ 36} Here, the description in Leffel's deed, as well as that in the other deeds in the chain of title, was based on the 1972 survey, which clearly indicated that Main Street's width was 66 feet. The original plat of Cass was also of record, which would have

revealed a difference in the width of the street. Because these matters could have been discovered with reasonable diligence, Leffel is deemed to have had that knowledge.

{¶ 37} Leffel argues that, as a "layman," he should not be charged with knowledge of the documents in the chain of title. However, that is not the standard that is applied. Leffel also did not raise this issue in the trial court.

{¶ 38} Leffel further argues that additional issues of fact exist as to Casstown's adverse possession because he exercised control over the property to the existing curb, meaning that Casstown did not have exclusive use of the property. Leffel also did not raise this matter in the trial court, and we conclude that he may not raise it now. "Courts have consistently held that arguments which are not raised below may not be considered for the first time on appeal." *Cole v. Estate of Green*, 2d Dist. Montgomery No. 16753, 1998 WL 46361, *2 (Feb. 6, 1998), citing *Belvedere Condo. Unit Owner's Assn. v. R.E. Roark*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993).

{¶ 39} Even if we were to consider this point under the doctrine of plain error, we would find it without merit. This "doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. This is not such a case.

{¶ 40} In his deposition in the trial court, Leffel mentioned that he had paid to replace two trees that were on his property when he bought it, but had later died. He also said he did not know if the trees were in the right of way or not. Leffel Deposition at

p. 39.   In addition, Leffel never mentioned when he replaced the trees.   Under the circumstances, one could not conclude that Leffel had demonstrated a genuine issue of material fact concerning Casstown's exclusive use of the property.   Specifically, these actions could have taken place after 2004, when adverse possession had already matured.   *See Wood v. Kipton*, 160 Ohio App.3d 591, 2005-Ohio-1816, 828 N.E.2d 173, ¶ 24-26 (9th Dist.) (landowner's uses of property after prescriptive easement had matured were irrelevant).

{¶ 41} It is certainly true that a homeowner may maintain the strip of land between the sidewalk and street by mowing the grass and the like, and may shovel snow from the sidewalk.   However, this does not demonstrate a right adversary to the public right over the streets.   *See Stone v. Cuyahoga Light Co.*, 9 Ohio N.P. (N.S.) 545, 20 Ohio Dec. 130, 139-140, 1909 WL 1282 (1909) ("An abutting lot owner may, with the permission, or the mere acquiescence, of the municipal authorities, plant and maintain shade trees upon the street; he may in like manner make and maintain an excavation under the sidewalk; and he may in like manner maintain some structures over and above the surface of the street.   But such private uses are only temporary privileges.   They must give way to the legitimate public uses, when asserted, and they can never ripen into a strictly juristic right, that is adversary to the public right, which is everywhere regarded as dominant.").   *See also Stueve v. City of Cincinnati*, 168 N.E.2d 574, 581 (1st Dist.1960) (Long, J., concurring) ("It has long been a recognized right of the abutting owner, to plant trees in the parkway strip so long as they do not interfere with the public uses * * *.").

{¶ 42} Thus, Leffel's replacement of two existing trees in the parkway strip did not indicate a use impacting Casstown's exclusive use; it was, in fact, irrelevant, since Leffel

only had the temporary privilege of placing trees in that area. Furthermore, we have also held that adverse possession need not be "absolutely exclusive." *Schaffer*, 2019-Ohio-572, 132 N.E.3d 220, at ¶ 28.[4] And finally, Leffel's request for permission to change the soil in the parkway strip was completely inconsistent with his claim that he exercised control over the property up to the curb.

**{¶ 43}** Accordingly, for the reasons stated, the trial court did not err in concluding that Casstown established by clear and convincing evidence that it obtained the land in the 66-foot right-of-way by adverse possession. In light of this finding, Leffel is not entitled to compensation for the alleged taking of his property, nor is he entitled to quiet title. As a result, Leffel's First, Second, Third, and Seventh Assignments of Error are overruled. The Ninth Assignment of Error is also overruled to the extent it addresses these assignments of error.

### III.

**{¶ 44}** The remaining assignments of error raise various and somewhat interrelated issues. Consequently, we will address them together, again with the understanding that the Ninth Assignment of Error is simply a general assertion that summary judgment was incorrect. The other remaining assignments of error state that:

> The Trial Court Erred in Failing to Find a Genuine Issue as to the
>
> Existence of Any Exception to Defendant's Immunity Under R.C.

---

[4] Even if this had been otherwise, Casstown would have been entitled to an easement by prescription, which has the same elements as adverse possession, except that exclusivity is not an element. *Harris v. Dayton Power & Light Co.*, 2016-Ohio-517, 56 N.E.3d 399, ¶ 13 (2d Dist.).

§2744.02(B)(3)(5), and R.C. §723.01 for Negligently Reconstructing Main Street in a Manner That Failed to Follow the Authorized Legislative Scheme for the Alteration of a Dedicated Street in a Municipal Plat. (Fourth Assignment of Error).

The Trial Court Erred in Finding that Defendant's Failure to Address Its Implicit Duty Under R.C. Chapters 711 to 723 to Lawfully Alter Dedicated Main Street, Has [Not] Foreseeably Resulted in Marketable Title Damage to Plaintiff's Property. (Fifth Assignment of Error).

The Trial Court Erred in Failing to Include With Its Grant to Defendant of an Interest in Part to Inlot 7, a Responsibility to Maintain Same in a Lawful Manner. (Sixth Assignment of Error).

The Trial Court Erred in Failing to Provide Leffel a Marketable Title to the Real Estate He Owns on Main Street in Casstown, Ohio. (Eighth Assignment of Error).

{¶ 45} Under these assignments of error, Leffel makes numerous contentions, including that the trial court erred in failing to consider that Casstown, as titled owner of the dedicated Main Street, had actual and constructive knowledge of the uncertain location of the platted centerline of Main Street before the 2011 construction. Leffel also contends that the trial court should have considered Casstown's failure to take any required action to lawfully alter the dedicated Main Street.

{¶ 46} In addition, Leffel argues that if the trial court gave Casstown a prescriptive easement, it should have ordered Casstown to be responsible for future repairs and maintenance, or that if the court granted adverse possession, it should have required

Casstown to record a corrective municipal plat. Leffel further contends that Casstown had "implicit" duties under R.C. Chapters 711-723, but ignored them, and was therefore liable for negligence under R.C. 2744.02(B)(3). And finally, Leffel maintains that he does not have a marketable title because the boundaries of his property are uncertain.

{¶ 47} Other arguments that Leffel raises in connection with these assignments of error have already been rejected or are rejected based on our prior discussion. In addition, much of the discussion under these assignments of error incorrectly focuses on irrelevant matters. As the trial court noted, Casstown did not dispute "that the 1833 Plat was not consistent with the Klockner survey, [or that] the right of way clearly exceeded the 60 feet originally platted." Decision at p. 9. However, by the time the Project began or was even in the planning process, Casstown had already acquired possession of the property by adverse possession. As indicated, with respect to Leffel's possession of the property, the 21-year period would have ended in 2004, or around seven years before construction began.

{¶ 48} Moreover, "[i]n the case of adverse possession, property is not taken. Rather, once the statutory period enunciated in R.C. 2305.04 has expired, the former titleholder has lost his claim of ownership and the adverse possessor is thereafter maintaining its possession, not taking property." *A.A.A. Invests.*, 17 Ohio St.3d at 152, 478 N.E.2d 773. *Accord Ohio Dept. of Adm. Servs. v. Morrow*, 67 Ohio App.3d 225, 234, 586 N.E.2d 259 (4th Dist.1990) ("the authorities agree that '[t]itle to property acquired by adverse possession matures into an absolute fee interest after the statutory period has expired.' At the same time, the true owner is divested of his estate in the property." (Citations omitted.)).

**{¶ 49}** Thus, because Casstown's interest had matured into an absolute fee interest in 2004, it had no "duty" to review the 1833 Plat or any obligation to do anything other than what it did before completing the Project. For the same reason, the issue of Casstown's "constructive knowledge" of the 1833 Plat is also irrelevant.

**{¶ 50}** Concerning the issue of R.C. 2744.02(B)(3), Leffel argues that Casstown is liable under this section for its failure to properly construct Main Street in accordance with the original Plat and for improperly placing pins after the sidewalk cross cuts were removed during construction.[5] Appellant's Brief at p. 11 and fn. 15, and p. 17, fn. 20. R.C. 2744.04(B(3) provides that:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that

---

[5] During construction, the cross-cut marks on the sidewalk were removed due to removal of the old sidewalk. Leffel subsequently asked that the marks be replaced, and mag nails were put in to mark the north and south boundaries of Leffel's property. Leffel Deposition at p. 29-30. According to Leffel's expert, the mag nails did not correctly mark the boundaries of Leffel's property. Cozatt Deposition at p. 37 and Ex. C to the Deposition. However, any alleged error in resetting the marks is irrelevant to the matters at issue in this case. Specifically, Leffel himself noted that the reset of the mag nails 2.5 inches north of their prior location only affected the north and south boundaries of his neighbors. *See* Memorandum of Plaintiff in Opposition to Summary Judgment at p. 15. Replacing the cross-cut marks, therefore, had nothing to do with the east/west relationship between Leffel's property and Main Street, which is the point at issue in this case. For purposes of summary judgment, "[a] 'material fact' depends on the substantive law of the claim being litigated." *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Accord Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21. As previously indicated, no genuine issues of material fact exist concerning the boundary between Leffel's lot and Main Street or the depth of his lot before and after construction of the Project.

it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

{¶ 51} Whether the current situation falls within this category is quite questionable. In the context of R.C. 2744.04(B)(3), "the word 'repair' means 'the state of being in good or sound condition.' " *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 19, quoting Webster's Third New International Dictionary 1923 (2002). There is no issue here concerning whether Route 55 was in good or sound condition. However, we need not address this issue, because Leffel failed to bring any such negligence claims within the two-year statutory period allowed by R.C. 2744.04(A).

{¶ 52} Notably, the trial court concluded, regarding Leffel's trespass claim, that it was barred by the statute of limitations in R.C. 2744.04(A) because the alleged encroachment occurred in 2011, and Leffel's claim was not brought until 2015. Decision at p. 12. Leffel failed to appeal this finding, and the trial court's reasoning applies here as well. Thus, to the extent that Leffel's action is based on Casstown's alleged negligence in failing to consult the original Plat, its actions with respect to the cross cut markers or pins, or some kind of "implicit" duty under R.C. Chapters 711-723, it is likewise barred.

{¶ 53} In the trial court, Leffel briefly referenced Casstown's failure to follow the platting process in R.C. Chap. 711 and his right to compensation under R.C. 719.01-719.21 for the fair market fee simple value of an alleged eight-foot strip of land that was taken. Memorandum of Plaintiff in Opposition to Motion for Summary Judgment, p. 14 and 16-17. The trial court did not specifically comment on this point, other than to note

that no taking of Leffel's property occurred.   Decision at p. 11 and fn. 30.

{¶ 54} With respect to the "implicit" duty in R.C. Chap. 711- R.C. Chap. 713, Leffel has failed to articulate what specific statutory requirements apply.   He simply indicates that the "statutory framework" in R.C. Chapter 7 was disregarded, without explaining in any detail how this occurred.   Appellants' Brief at p. 4, 7, and 11; Appellant's Reply Brief, p. 7.   We are not required to guess at what a party's arguments are, nor are we permitted to construct arguments for litigants.

{¶ 55} We do note that on page 10 of his brief, Leffel mentions R.C. 711.19 and damages that may be awarded for "a taking for an alteration of dedicated Main Street right-of-way * * *."   However, R.C. 711.19 does not apply to this case.

{¶ 56} R.C. 711.17 states that:

Upon the application of two thirds of the proprietors of land described in a plat of a municipal corporation, the court of common pleas may alter or vacate the plat of any such municipal corporation, addition thereto, or parts thereof, within the county.

{¶ 57} R.C. 711.19 further provides that:

If the petitioners for the alteration or vacation of a plat under section 711.17 of the Revised Code produce to the court of common pleas satisfactory evidence that notice has been given as required by section 711.18 of the Revised Code, and that two thirds of the persons owning lots or parts thereof in a municipal corporation, part thereof, or addition thereto, or their authorized agents or attorneys, have made application to have the whole or a part of such municipal corporation or addition altered or vacated,

the court may proceed to so alter or vacate. The vacation of a municipal corporation, addition, or part thereof, shall not vacate any part of a state or county highway.

{¶ 58} Clearly, no application has been made by two-thirds of persons owning lots in Casstown. Furthermore, even if that had been otherwise, R.C. 711.19 clearly prohibits vacation of any part of a state highway, i.e., in this case, State Route 55. In addition, while R.C. 711.23 allows damages to be awarded to owners who do not assent to the vacation and who will suffer damages, that provision, again, applies only to the applications authorized under R.C. 711.17.

{¶ 59} Another argument Leffel makes under these assignments of error is that the trial court's decision did not solve marketability issues with his title, but exacerbated them by continuing uncertainty over his boundaries. In this regard, the trial court concluded that "[b]ased on Defendant's adverse possession of the sidewalk and the clear terms of Plaintiff's deed descriptions, the Court finds there is no uncertainty regarding the boundaries of Plaintiff's real estate, before or after the Route 55 Project, therefore Plaintiff's title is marketable." Decision at p. 11.

{¶ 60} Leffel's argument is based on points we have already rejected. Specifically, he again contends that the Plat of Cass controls, and that he was in "exclusive possession" of the land from the curb to his "home" since the purchase in 1983 by mowing grass, removing snow, etc.[6] Contrary to Leffel's contention, the 1983 deed controls, and his title is marketable.

{¶ 61} Under the Marketable Title Act ("MTA"), " 'Marketable record title' means a

---

[6] As indicated, Leffel did not live at the property; therefore, it was not his "home."

title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code." R.C. 5301.47(A). " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it is recorded.' " R.C. 5301.47(E).

{¶ 62} The purpose of the MTA is "to protect both owners and purchasers of real estate against inaccurate or clouded titles by reducing the period of time examined in a title search." *Alice Ruth Norris Carlson v. Koch*, 8th Dist. Cuyahoga Nos. 36497, 36498, 1978 WL 217670, *4 (Jan. 19, 1978). Courts have held that marketability is assessed from the date that a party seeks to enforce a superior property right. *David v. Paulsen*, 2019-Ohio-2146, 137 N.E.3d 689, ¶ 20 and fn. 2 (6th Dist.). Here, that would be January 27, 2017, or the date Leffel filed his complaint. Forty years before that would be January 27, 1977. The most recent deed filed before the latter date is the December 12, 1972 deed, which includes the description prepared by Richard Klockner in 1972. *See* Defendant's Motion for Summary Judgment, Ex. E, at p. 2. This 1972 deed is the root of title deed for Leffel's property.[7]

{¶ 63} "R.C. 5301.48 provides that one 'who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such

---

[7] Even if we used the filing date of the 2015 action, the December 12, 1972 would still be the next most recent deed prior to 1975.

interest * * *.' " *Heifner v. Bradford*, 4 Ohio St.3d 49, 50-51, 446 N.E.2d 440 (1983). As indicated, having marketable record title extinguishes claims and interests existing before the date of the root title. *David*, 2019-Ohio-2146, 137 N.E.3d 689, at ¶ 22 (deed restrictions filed before the root of title are invalid under the MTA). Thus, any prior alleged interest conflicting with the 1972 deed would no longer exist, nor would any future purchaser be permitted to challenge the marketability of Leffel's property interest based on the 1972 deed.

{¶ 64} Before the MTA was enacted, Ohio courts had held that "[a] 'marketable title' imports such ownership as insures to the owner the peaceable enjoyment and control of the land as against all others." *McCarty v. Lingham*, 111 Ohio St. 551, 146 N.E. 64, (1924), paragraph four of the syllabus. For example, a lack of marketable title exists when the subject property is encumbered by liens. *Smith v. Pickersgill*, 5th Dist. Perry No. 14-CA-00012, 2014-Ohio-5606, ¶ 15.

{¶ 65} There is no indication here, vis-à-vis the land claimed by adverse possession, that Leffel lacks a marketable title to his own property. As indicated, the 66-foot right-of-way has been in use since 1968, and the Route 55 improvements did not alter the right-of-way. Mescher Affidavit at ¶ 21. Consequently, we disagree with the claim that Leffel lacks marketable title or that issues exist with respect to the right-of-way to which Casstown was granted adverse possession.

{¶ 66} Finally, as indicated, Leffel argues that the trial court erred by failing to impose a duty on Casstown to maintain the property it gained through adverse possession. We disagree that any order was required. By law, "[a] municipality is responsible for the maintenance and repair of sidewalks located within the municipal

corporation." 1986 Ohio Op. Atty. Gen. No. 86-080 at 1, citing R.C. 723.01.[8] This duty also extends to the park strips or parkway between the pavement of the sidewalk and the curbing of the paved street. *Joseph v. City of Portsmouth*, 44 Ohio St.2d 155, 157, 339 N.E.2d 622 (1975). *Accord Martin v. City of Warren*, 11th Dist. Trumbull No. 2000-T-0112, 2002 WL 818863, *2 (Apr. 30, 2002). Furthermore, since Casstown is now the owner of the property in question, it would obviously be responsible for maintaining it.

**{¶ 67}** Based on the preceding discussion, the Fourth, Fifth, Sixth, and Eighth Assignments of Error are overruled. The Ninth Assignment of Error is also overruled to the extent it addresses these assignments of error.

## IV. Conclusion

**{¶ 68}** All of Leffel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

---

[8] R.C. 723.01 has been amended a number of times since the Attorney General's Opinion was issued in 1986. However, none of the amendments affects the responsibility to maintain and repair sidewalks within a municipal corporation. Instead, the amendments relate to immunity under R.C. 2744.02, which would impact Casstown's liability for injuries on property it maintains. *E.g., Supensky v. Oakwood*, 2d Dist. Montgomery No. 20812, 2005-Ohio-2859, ¶ 16.

Copies sent to:

David E. Beitzel
Edward C. Dowd
Michael D. Rice
Hon. Jeannine N. Pratt